King *v.* Wilcomb.

New-York Special Term, October, 1849.   *Harris*, Justice.

King *vs.* Wilcomb and Howland.

7b 263
d57ad307

The general rule is that any one who has a temporary interest in land, and who makes additions to it, or improvements upon it, with a view to the better use or enjoyment of it, while such temporary interest continues, may, at any time, before his right of enjoyment expires, rightfully remove such additions and improvements. *Per* Harris, J.

If there are any exceptions to this general rule, they are limited, *it seems*, to cases where the removal of the additions or improvements made by the tenant would operate to the prejudice of the inheritance, by leaving it in a worse condition than when the tenant took possession.

In the case of a letting of land for the purpose of nurturing trees and plants, until they are ready to be transplanted, in the absence of any express agreement, the interest of the tenant, in the land, for the purpose contemplated by the parties, will be held to continue until that purpose is accomplished.

Accordingly, where trees, belonging to K. & W., composing a partnership engaged in the nursery business, were planted upon the land of W., one of the partners, by his consent; *held* that the copartnership had a right, as against W., to cultivate the trees until they were prepared for transplanting, and then, from time to time, to remove them, as their business required.

And W. having, after the trees were thus planted, mortgaged the land to B., and

it having been sold, under a decree of foreclosure, to H., and neither the mortgagee nor the purchaser being entitled to protection as bona fide purchasers without notice; *Held* that K. might enforce his rights against them, to the same extent as he might have done against W., had the title to the land still remained vested in him.

*Held also*, that the trees which had been planted by the partnership upon the land of W. still remained liable for the payment of the debts of the partnership, and for any balance found due to K. upon the final adjustment of the partnership accounts.

IN EQUITY.  The plaintiff and the defendant Wilcomb, having been engaged in the business of nursery-men with other persons, at Flushing, Long Island, in March, 1838, purchased the interest of their copartners, and commenced the business on their own account, under the firm of Wilcomb & King. They were to be in all respects equal partners.  For a time, the business was carried on upon land owned by the partners, as tenants in common.  Subsequently, the business requiring more land, a portion of their trees and shrubs were removed to land owned by Wilcomb individually.  Some three or four acres of Wilcomb's land was thus used.  The occupation commenced, as appears from the testimony, in 1839, and continued until 1845, at which time the partnership had 22,000 trees growing upon Wilcomb's land, worth about $7000.  In January, 1842, Wilcomb mortgaged the land owned by him individually, including that occupied by the firm for the purposes of their nursery, and also his undivided half of the land, with the trees, plants and shrubs thereon, owned by the partnership, to Thomas Bloodgood.  The mortgage having been foreclosed, the premises were sold under a decree of foreclosure, on the 28th of May, 1845.  At the sale, the plaintiff gave public notice of his claim to one half the nursery planted by the firm upon Wilcomb's land.  The defendant Howland became the purchaser of that part of the mortgaged premises owned by Wilcomb individually, and the executor of the mortgagee purchased the undivided half of the premises owned by the partners.  The bill in this cause was filed in November, 1845, to close up the affairs of the copartnership, and, besides the usual prayer for a decree against the defendant Wilcomb, as a partner, the plaintiff asked

King *v.* Wilcomb.

for a decree declaring that he is entitled to one half the trees growing in the nursery, upon the premises purchased by the defendant Howland. The defendants put in their joint and several answer, in which the facts were admitted to be substantially as above stated. The defendant Howland claimed that by virtue of the master's deed to him he became entitled absolutely to the land described therein, with the appurtenances, and that the trees, plants and shrubs growing upon the land at the time of the sale, being part and parcel of the freehold, became his absolute property.

It was charged in the bill that there was some trust or agreement between Wilcomb and Howland, by which Wilcomb was to have some interest in the nursery and lands conveyed to Howland, and that the purchase was made in the name of Howland for the purpose of securing to Wilcomb some benefit or advantage. This was denied in the answer, and there was no proof to sustain the charge. The cause was heard upon pleadings and proofs.

*W. C. Noyes,* for the plaintiff.

*M. S. Bidwell,* for the defendants.

HARRIS, J. That the plaintiff is entitled to a decree declaring the partnership dissolved, and directing an account to be taken in respect to the affairs of the partnership, is not denied. But as the particular directions to be inserted in the decree may to some extent depend upon the determination of the claim made by the plaintiff to the nursery which the partnership had planted upon the land purchased by the defendant Howland, that branch of the case should first be considered

There can be no doubt, I think, that as between the partnership and Wilcomb, the trees and shrubs, composing the nursery, are to be regarded as personal chattels. The consent of Wilcomb that the partnership should occupy his land, for the purpose of its business, implies a license to remove the property planted there when the proper period of removal should arrive.

King v. Wilcomb.

The relation of landlord and tenant was created by the permission to occupy the land. The ancient rule, that whatever was attached to the freehold by the tenant became a part of the freehold, and could not afterwards be removed by him, has gradually been relaxed in favor of the tenant, until now, I understand the general rule to be, that any one, who has a temporary interest in land, and who makes additions to it or improvements upon it, for the purpose of the better use or enjoyment of it, while such temporary interest continues, may, at any time before his right of enjoyment expires, rightfully remove such additions and improvements. If he omit to sever the addition or improvement until his right of enjoyment ceases, such omission is to be deemed an abandonment of his right, and thereafter the addition or improvement he has made becomes, to all intents, a part of the inheritance, and the tenant, as well as any other person who severs it, becomes a trespasser. I think this may now be stated to be the general rule in respect to fixtures which a tenant attaches to the freehold. To this extent, has the original rule of the common law, *quicquid plantatur solo, solo cedit*, yielded to the changed condition of society. Public policy, especially in this country, requires that the tenant should be permitted so to use the premises he occupies, as to derive from them the greatest amount of profit and comfort, consistent with the rights of the owner of the freehold. There may be exceptions to the general rule I have stated, but I think they will be found limited to cases where the removal of the additions or improvements made by the tenant, would operate to the prejudice of the inheritance, by leaving it in a worse condition than when the tenant took possession. (2 *Kent's Com.* 4th ed. 343. *Van Ness* v. *Pacard*, 2 *Peters*, 137. *Holmes* v. *Tremper*, 20 *John.* 29. *Winslow* v. *Merchants' Ins. Co.* 4 *Met.* 306.)

The only difficulty in applying this rule to the case of a nursery planted by a tenant, is in determining when the right of removal ceases. Usually the temporary interest of the tenant, in the land he occupies, is limited by a term of years, or the termination of some specified life. But in the case of a letting

King v. Wilcomb.

for the purpose of nurturing trees and plants until they are ready to be transplanted, I think, in the absence of any express agreement, the interest of the tenant in the land, for the purpose contemplated by the parties, should be held to continue until that purpose is accomplished. (*Miller* v. *Baker*, 1 *Metc.* 27. *Penton* v. *Robert*, 2 *East*, 88. *Wyndham* v. *Way*, 4 *Taunt.* 316. *Grady's Law of Fixtures*, 51 *Law Library*, 80.)

Thus far the case presents but little difficulty. The right of the partnership, as against Wilcomb, to cultivate the trees they had planted, until they were prepared for transplantation, and then, from time to time, to remove them, as their business required, seems to me unquestionable. But another element is brought into the case, which materially increases its difficulty. After the partnership had commenced planting the nursery, as it appears from the evidence, and while the trees were growing in the soil, Wilcomb, the landlord, mortgaged the land to Bloodgood, and the defendant Howland, as purchaser under that mortgage, claims that he is entitled, not only to the land, but to the trees growing there. We are therefore next to ascertain what are the rights of the partnership, as against Howland, in respect to the trees in the nursery.

If no other person but the mortgagor had been interested in the nursery, at the time the mortgage was executed, there can be no doubt, I think, but that the trees would have been held by the mortgage, and, upon the sale, would have become the property of the purchaser, as much as the soil in which they grew. As between vendor and purchaser, or mortgagor and mortgagee, every thing attached to the freehold, or growing in the soil, in the absence of any express provision to the contrary, will pass to the purchaser or mortgagee as a part of the realty. (*Miller* v. *Plumb*, 6 *Cowen*, 665. *Union Bank* v. *Emerson*, 15 *Mass.* 152.) We have then in the trees and shrubs, growing in the nursery, a kind of property which, as between the partnership and Wilcomb, is personal property, belonging to the partnership, but as between Wilcomb and his mortgagee is a part of the realty, subject, like the land itself, to the operation of the mortgage. It is the case of a landlord executing a mort-

gage or conveyance of land occupied by a tenant, who, for his own temporary use or convenience has attached to the freehold fixtures which he would have a right to remove, but which, if the landlord himself had put them there, he would not be allowed, as against his vendee or mortgagee, to remove. I am by no means certain that the tenant could in any case be deprived of his right of removal, if exercised within his term. But if he could be so deprived at all, it could only be by one presenting himself in the character of a bona fide purchaser, for a valuable consideration, without notice of the tenant's interest. It is admitted that the defendant Howland, when he purchased, had, through his agent who made the purchase for him, actual notice of the plaintiff's claim. If therefore the plaintiff is not entitled to enforce his claim to the nursery, as against Howland, it must be, not because he is himself a purchaser without notice, but because, having notice of the plaintiff's interest in the nursery, he purchased under a mortgage executed under circumstances which entitle the mortgagee to protection as a bona fide incumbrancer without notice. I admit that a mortgagee who has made advances under circumstances which, if he had become the purchaser instead of a mortgagee, would have placed him in the position of a bona fide purchaser for a valuable consideration actually paid without notice of the rights claimed against him, is to be protected as a bona fide purchaser. (*In the matter of Howe,* 1 *Paige,* 125.) It is also true, that a purchaser under such a mortgage, though with notice of the rights claimed against it, is entitled to the same protection as the mortgagee would have been if he had become the purchaser. (*Story's Eq. Jur.* §§ 409, 410, 1503 *a. Varick* v. *Briggs,* 6 *Paige,* 323.) The reason of the rule is obvious : for if this were not the rule it might, and often would happen, that the bona fide purchaser would lose the benefit of his purchase, through inability to sell. If, then, the mortgagee in this case took his security under such circumstances as would have entitled him, if he had purchased, instead of Howland, to be protected against the plaintiff's claim, as a bona fide purchaser, then Howland is entitled to the same protection.

King *v.* Wilcomb.

I was at first inclined to think that, inasmuch as the plaintiff had omitted to charge, in his bill, that the mortgagee had notice of his right in the nursery, the case should be determined upon the assumption that the mortgage was taken without such notice. But, upon more reflection, I have come to the conclusion, that the allegations of the bill are sufficient in this respect. The rule, that a plaintiff can only have relief *secundum allegata et probata,* is satisfied when the statements and charges in the bill are such as, if admitted or proved, would warrant the decree sought. Governed by this test, the bill will be found sufficient. If all it states and charges is true, and nothing else is alledged and proved in defense, the plaintiff would be entitled to the relief for which he asks. If Howland would protect his claim to the nursery, upon the ground that he is a purchaser under a mortgage, taken under circumstances which would constitute the mortgagee a bona fide purchaser without notice, it is for him to alledge, either by plea or in his answer, the grounds upon which he relies, and thus tender to the plaintiff an issue upon his defense. The plea or answer must, like the bill, make a case which, if admitted by the omission of the plaintiff to reply, or sustained by the proof, would entitle the party to a decree in his favor. I do not think this answer presents such a case. It admits the execution of the mortgage, as stated in the bill, but it does not state, or claim, that the mortgage was executed as security for any advances made upon the credit of the security ; nor does it state, or claim, that the mortgagee, at the time he took the security, was ignorant of the plaintiff's rights in the nursery. In short, it does not present a state of facts which would entitle the mortgagee himself to protection *quasi* a bona fide purchaser. If this be so, it follows that Howland is not entitled to protection in right of the mortgagee. We have already seen that he can not defend his claim to the nursery against the plaintiff by reason of being himself a bona fide purchaser without notice, and as neither the mortgagee nor the purchaser under the mortgage can maintain that character, the result is that the plaintiff may enforce his rights against them, to the same extent as he might have done against

Wilcomb, had the title to the land still remained vested in him. It may be added, that there is nothing in the proof that even tends to show, that under any state of pleadings such a defense could be sustained. My opinion therefore is, that while, by virtue of the mortgage executed by Wilcomb, and his purchase under that mortgage, Howland acquired all the interest of Wilcomb in the nursery, the plaintiff was not divested of his interest. The trees and shrubs which had been planted by the partnership upon the land purchased by Howland, still remained liable for the payment of the debts of the partnership and any balance in favor of the plaintiff upon the final adjustment of the partnership accounts.

There must be a decree declaring the rights of the parties upon these principles, and directing the usual account to be taken in relation to the affairs of the partnership, and appointing a referee for that purpose. The decree should also direct that the referee ascertain and report the number and value of the trees and shrubs growing in the nursery at the time the premises came into the possession of the defendant Howland, and also the number and value of the trees and shrubs still remaining there ; and if any have been removed since the defendant Howland came into possession, that the referee also ascertain and report the number and value of the trees so removed, and who is justly chargeable therewith, as between the parties to this suit, to the end that upon the coming in of the report, such further decree may be made as shall give effect to the rights of the parties. The decree may also contain a provision for the appointment of a receiver of the partnership effects, with the usual powers, if desired by either party. All further directions, together with the question of costs, are to be reserved until the coming in of the report.