JOHN D. HAMILTON, RESPONDENT, *v.* WILLIAM AUSTIN AND THOMAS D. CHAPMAN, APPELLANTS.

*Nursery stock, growing in a nursery, is covered by a mortgage of the land — right of the tenant to remove and sell it — when the mortgagee cannot recover the value of what is so removed.*

Although trees grown in a nursery expressly for sale as merchandise are covered by a mortgage on the land, yet it is not waste for a tenant of nursery grounds, who has entered thereon after a mortgage has been given upon them, to remove and sell, in good faith, and in the usual course of business, growing nursery stock, if this be done before an action to foreclose the mortgage has been begun, and not in apprehension of the foreclosure or for the purpose of injuring the freehold and security.

A mortgagee cannot, in an action brought against the occupant of the land to recover a deficiency arising upon a sale in the action of foreclosure, recover the value of the nursery stock so sold by him, in good faith and in the usual course of business.

After an action of foreclosure has been commenced the plaintiff may, if the security is in jeopardy, intercept, through the aid of a receiver, the rents or emblements, or both; but the receiver is not entitled to recover for rents collected or emblements removed prior to the date of his appointment.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

Prior to November 6, 1876, John F. Chapman was in possession of thirty acres of land as a tenant, which he had occupied for several years as a nursery. November 6, 1876, the owner of the fee conveyed the land by a warranty deed to Chapman, who on the same day gave the vendor his bond conditioned for the payment of $5,000 (part of the purchase-price) on the 6th of November, 1881, with semi-annual interest, payable on each fourteenth day of April and October thereafter. As security, Chapman on the same day executed a mortgage on the premises, which was recorded November 8, 1876. Neither conveyance refers to the nursery or its stock. February 7, 1877, the plaintiff purchased the bond and mortgage in good faith, and for value, taking an assignment, which was recorded February 7, 1877.

November 17, 1881, the plaintiff began an action to foreclose the mortgage, making the defendants in this action defendants in the foreclosure action.

February 25, 1882, judgment was entered in the foreclosure action, and April 10, 1882, the premises were sold and conveyed thereunder to the plaintiff for $4,100, leaving a deficiency of $1,812.90 due on the judgment.

Before the plaintiff purchased, the mortgagor, knowing of his contemplated purchase, told the plaintiff that the mortgage covered the nursery stock; that he intended to continue the business, and that the security was good; upon which statement the plaintiff relied in purchasing the bond and mortgage. From November 6, 1876, to January 1, 1879, the mortgagor continued the nursery business, growing and selling trees, according to the custom of nurserymen. January 1, 1879, the mortgagor sold a half interest in the nursery stock and business to William Austin (one of the

defendants), they becoming, on the same day, equal copartners in the business, the firm on the same day taking a lease of the land during the existence of the copartnership, which was to continue during the pleasure of the copartners. Austin, when he purchased, knew of the plaintiff's mortgage, but did not know that he purchased it upon the mortgagor's statement that it was a lien upon the nursery stock. Chapman and Austin continued the nursery business until April 29, 1881, growing and selling trees, according to the custom of nurserymen. April 29, 1881, the mortgagor (John F. Chapman) assigned all of his interest in the nursery business to Thomas D. Chapman, in consideration of a precedent debt. (The twenty-fifth finding of fact by the referee states that the assignment was made April 29, 1879, but the briefs of counsel fix the date as April 29, 1881, which is evidently correct.)

Thomas D. Chapman, when he purchased, knew of the plaintiff's mortgage, but did not know that he purchased it upon the mortgagor's statement that it was a lien upon the nursery stock.

May 1, 1881, Thomas D. Chapman entered into copartnership in the nursery business, and continued to occupy the premises as a nursery until April 10, 1882, the date of the sale and conveyance under the foreclosure. During all this time the mortgagee and his assignee (this plaintiff) knew that the nursery business was being carried on on the premises by said persons, and that they were engaged in rearing and selling trees according to the custom of nurserymen. The plaintiff made no objection to the sale of trees, or to the mode in which the business was conducted until December 2, 1881, when he obtained and served an order in the foreclosure action restraining the defendants in this action from removing trees, shrubbery or fixtures from the premises, which order was modified March 30, 1882, so as to allow defendants to remove so much of the nursery stock as had been placed on the premises since January 1, 1879. May 1, 1881, the mortgagor died seized of the premises and insolvent, leaving a will of which Thomas D. Chapman was one of the executors. The will was probated, but whether it devised this real estate, or whether it descended to his heirs-at-law, does not appear.

This action is brought to recover of the defendants damages for the removal from the premises, and selling nursery stock between May

1, 1881, and May 10, 1882, to the injury of the plaintiff's security as mortgagee. The referee finds that between May 1, 1881, and April 10, 1882, the defendants removed from the premises trees, plants and shrubs of the value of $2,278, as they stood upon the premises before removal. It is further found that the value of the stock removed, which had been planted by the mortgagor prior to January 1, 1879, was $104; that the value of stock removed, which had been planted by the mortgagor and Austin, prior to April 29, 1881, was $1,758, and that the value of the stock removed which had been planted by the defendants since April 29, 1881, was $416. The referee held that the removal was waste, and directed a judgment for the plaintiff for $1,812.90, the amount of the deficiency on the foreclosure sale.

Judgment was entered, from which the defendants appeal.

*William G. Tracy*, for the appellants.

*Cornelius E. Stephens*, for the respondent.

FOLLETT, J. :

As between mortgagor and mortgagee, trees grown in a nursery expressly for sale as merchandise, are covered by the mortgage, and those standing on the land when it is sold under a foreclosure, pass with the land to the purchaser. (*Maples* v. *Millon*, 31 Conn., 598; *King* v. *Wilcomb*, 7 Barb., 263–267; *Price* v. *Brayton*, 19 Iowa, 309; *Adams* v. *Beadle*, 47 id., 439; Jones' Mort., §§ 434, 697.) Fixtures placed or emblements grown upon mortgaged premises by a tenant of a mortgagor, entering subsequent to a recorded mortgage, are covered by it, and the tenant's right of removal is governed by the rules prevailing as between mortgagor and mortgagee, and not by the rules prevailing between landlord and tenant. (*Lynde* v. *Rowe*, 12 Allen, 100; *Clary* v. *Owen*, 15 Gray, 522; *Lane* v. *King*, 8 Wend., 584; Jones' Mort., §§ 439, 697, 776, 780.) The rule is the same when the tenants are a firm composed of the mortgagor and a third person. (*Lynde* v. *Rowe, supra.*) None of the cases cited involve the question as to whether a mortgagee can recover of a mortgagor or of his tenant for trees removed before foreclosure in the due course of business. In *Maples* v. *Millon* (*supra*), the mortgagor began the removal of nursery trees pending a foreclosure, and he was restrained by an injunction issued in the

action. In *Price* v. *Brayton* and *Adams* v. *Beadle* the nursery stock was growing on the land at the time of the foreclosure sale. In *King* v. *Wilcomb* (*supra*), the parties were copartners in a nursery growing on the land of Wilcomb, which he mortgaged while the firm was in possession and engaged in the business. Upon the foreclosure the land upon which the trees were then standing was sold to Howland, who purchased with notice that King claimed half of the trees. Howland (who was a defendant in the action), failed to allege or prove that the mortgagee under whose mortgage he claimed was a mortgagee in good faith and for a valuable consideration; and the court, applying the rule that one who seeks the benefit of the position of a purchaser in good faith, and for a valuble consideration, must allege and prove the fact (Van Santv. Pl. [Moak's ed.], 394, 564; Pom.'s Eq. Jur., § 785), held that Howland was not a purchaser in good faith, and that King was entitled to half of the trees. In the case last cited, it is to be observed that King's interest in the premises was acquired prior to the mortgage, while in the case at bar the mortgage is prior to the interest acquired by the defendants.

Trees reared in nursery grounds expressly for sale as merchandise possess none of the legal characteristics of fixtures. Fixtures are articles which have an existence independent of a freehold, and are afterwards annexed to and become a part of it. The trees in dispute never had an existence independent of the freehold, were not designed for use in connection with it, but were there solely for growth, and destined to become a part of other realty. Nursery trees more nearly resemble emblements, though they are not strictly such; emblements being the annual product or fruit of things sown or planted. Hops, berries and the like are emblements, but the roots and bushes from which they grow are perennial, and not strictly emblements. While the rules for determining the rights to fixtures and emblements, as between mortgagors and mortgagees, are not strictly applicable to the question involved, yet they throw some light upon it. Emblements reared by tenants entering subsequent to a mortgage, if growing at the time of the foreclosure sale, pass to the purchaser. But if the tenant, in the usual course of husbandry, gathers the emblements before sale on foreclosure, they belong to him, and he is not liable in an action of waste.

Waste is an improper destruction or material alteration or deterioration of the freehold, or of things forming an essential part of it, done or suffered by a person rightfully in possession as tenant, or having brt a partial estate, like a mortgagor. It is not waste for a mortgagor of agricultural lands to sell timber, remove or change fixtures, if done in good faith, in the usual course of good husbandry, and before foreclosure is begun, or default has occurred upon the mortgage. Nor is it waste for him to sell stone from open quarries, or minerals from open mines, if done in the usual course of such business, though the product removed may exceed the value of the remaining freehold. These considerations lead to the conclusion that it is not waste for a tenant of nursery grounds, entering subsequent to a mortgage, to remove and sell in good faith, and in the usual course of business, growing nursery stock, if done before foreclosure is begun, and not in apprehension of foreclosure or for the purpose of injuring the freehold and the security. (*Adams* v. *Beadle, supra.*)

After foreclosure is begun the plaintiff may, if the security is in jeopardy, intercept, through the aid of a receiver, the rents or emblements, or both, upon the theory that the whole estate is pledged as security for the debt, and that the creditor is immediately entitled to his money, or the property pledged. (*Hollenbeck* v. *Donnell*, 94 N. Y., 347; *Bank* v. *Arnold*, 5 Paige, 40.) But in such case a receiver is not entitled to recover for rents collected or emblements removed prior to the date of his appointment, his right being confined to subsequent rents and profits, and to the rents uncollected at the time of his appointment. No case has been found (in the States in which the legal right to possession, and to the rents and emblements continues in the mortgagor until sale), holding that a plaintiff may neglect to enforce his equitable right to intercept, through a receiver, rents and emblements and recover them, or their value, after foreclosure, in an action at law. After foreclosure the mortgagee's right to recover of the mortgagor, or his tenant, for acts committed upon the land before the sale, is limited to acts amounting to waste, within the definition above given. Such was the case of *Van Pelt* v. *McGraw* (4 N. Y., 110). The undisputed evidence is, that part of the trees for which the plaintiff recovered were removed and sold in the usual course of business.

The defendants excepted to the conclusions of the referee, that the plaintiff was entitled to recover for trees so sold, and requested a finding that the plaintiff was not entitled to recover for trees so sold and removed, which was refused, and an exception taken. For this error the judgment must be reversed.

It would be unwise at this time, in advance of the evidence which will be given and the facts which will be found on the retrial, to attempt a more definite specification of the classes of trees for which, if any, a recovery may be had. The case does not disclose when default occurred in the payment of interest, the number of trees removed before or after foreclosure was begun, what portion was fit for removal and sale in the ordinary course of business at the time of removal, or the number removed and transplanted in other grounds, if any, to escape the consequences of foreclosure. Under the evidence developed on the trial, the statement of the mortgagor to the plaintiff before purchasing the mortgage, that the nursery stock was subject to it, does not change the rights of the parties.

The mortgage was a general lien under the law, and the evidence is insufficient to justify the conclusion that either party understood it to be a specific lien on the stock, independent of its connection with the land. After the date of the plaintiff's purchase, the mortgagor and his tenants continued the business of growing new trees and selling those fit for market, as before, without objection from the mortgagee, who never claimed a specific lien. A mortgagee may, by acquiescence, waive his right to recover for the removal of things belonging to the freehold. (Jones' Mort., § 692.) The evidence does not warrant the conclusion that the defendants were tresspassers on the land, instead of tenants. (*King* v. *Wilcomb*, 7 Barb., 263; Wood's L. and T., 67.)

The judgment is reversed and a new trial ordered before another referee, with costs to abide the event.

HARDIN, P. J., and BOARDMAN, J., concurred.

Judgment reversed and a new trial ordered before another referee, with costs to abide the event.