[No. 6657. Decided July 15, 1907.]

B. L. MUIR, *Respondent*, v. W. MOELLER, *Appellant*.[1]

BROKERS—CONTRACT—PERFORMANCE WITHIN AGREED TIME—EVIDENCE—SUFFICIENCY. In an action to recover a broker's commission for procuring a purchaser prior to 3:30 p. m. of the same day the contract was made, the evidence is sufficient to sustain findings for the plaintiff, where it appears that he procured a purchaser ready and able to buy on the terms stated within the required time, but a change in the terms of the contract being suggested, the owner referred the same to his attorney, and finally consented thereto late the same afternoon, but demanded the purchaser's signature to the modified contract before 9:30 o'clock the next morning; that, upon its being explained that it would be difficult to find the purchaser by that time, the owner remained silent, thereby acquiescing in delay for a reasonable time; and that the purchaser signed the modified contract the next morning as soon as he could be found, and is still ready and willing to buy the property.

[1] Reported in 90 Pac. 1042.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered October 12, 1906, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, in an action on contract.   Affirmed.

*Harrison Bostwick,* for appellant.

*Vince H. Faben,* for respondent.

HADLEY, C. J.—The plaintiff sued the defendant to recover upon a real estate brokerage contract.   The contract set forth in the complaint is as follows:

"This agreement made between W. Moeller hereinafter called the first party, and B. L. Muir & Co., called the second party, Witnesseth, That in consideration of one dollar in hand paid, the receipt of which is hereby acknowledged by first party and of valuable services performed and to be performed by the said second party, the said first party hereby grants the said second party for a term of until 3:30 p. m. today the exclusive and irrevocable right to sell the following described premises, to wit:   Lots 6-7 E. 270 ft. 14-15-16-17-, B 279 for $13,500.00 dollars, payable as follows:   Consideration must be $1,000 deposited and balance 10 days after title is shown good and in case a purchaser is found, willing, able and ready to purchase and pay for the said property upon said terms, or any less price the said first party may accept.   The said first party hereby agrees to furnish an abstract of such property showing perfect title to date of sale and to convey said premises to such purchaser by good and sufficient warranty deed of conveyance.   And the said first party agrees to pay said second party a commission of five per cent upon the selling price of said property, and in addition thereto, all over said selling price above expressed that the second party may sell said premises for."

The contract was signed on the 15th day of January, 1906, the words "until 3:30 p. m. today," used in the body of the contract, referring to said date.

It is alleged that within a few moments of the time of its execution and prior to 3:30 p. m. of said day, the plaintiff procured and produced a purchaser who was ready, able, and

willing to buy the property upon the terms expressed in the contract, and that thereupon tender was made of the part of the purchase money which was to be paid at once; that thereafter the defendant, without cause, refused to make conveyance of the property to the purchaser; that the purchaser is still ready, able, and willing to purchase upon the terms aforesaid; that plaintiff has done and performed all things required of him under the contract, and that there is due him as commission provided by the contract the sum of $675, for which amount he demands judgment. The defendant denied that a purchaser was procured according to the terms of the contract. The cause was tried by the court without a jury, and resulted in a judgment for plaintiff for the amount demanded in his complaint. The defendant has appealed.

After finding the execution and existence of the brokerage contract, the court found as follows:

"That immediately thereafter the plaintiff procured a purchaser for said real estate who was ready and willing to pay the price mentioned in said contract therefor, and who was competent and capable of paying and who was willing to pay in cash the full contract price for said real estate as was necessary to procure the same; and that said purchaser is still ready and willing to purchase said property at said price and is capable of paying the price thereof.

"That on the 15th day of January, 1906, prior to the hour of 3:30 p. m. on said day the defendant entered into negotiations with a purchaser so as aforesaid produced by the plaintiff, for the sale to him of said real estate and the negotiations therefor continued into the 16th day of January, 1906, and that on the 16th day of January aforesaid said purchaser being still ready and willing to purchase the same but the defendant refused then and there and has ever since refused to carry out his part of said contract of purchase and sale."

It is contended by appellant that these findings are not supported by the testimony. There was testimony that before 3:30 p. m. of the day named, the respondent produced a purchaser who was ready, able, and willing to purchase the property at the price of $13,500 named in the brokerage contract.

A proposed memorandum of agreement of purchase which had been signed by the purchaser provided for ten days' time, after the delivery of an abstract of title for examination of the same; that $500 cash should be immediately paid; that $6,500 further cash should be paid ten days from the date of the contract, and $6,500 within two years, with interest at six per cent per annum. This proposed agreement was shown to appellant, and he declined to sign it until his attorney, Mr. Bostwick, had examined it. It differed from the terms mentioned in the brokerage contract by making a deferred payment of the last $6,500, and, also, in providing for $500 cash deposit instead of $1,000. It was testified that he was told at the time by respondent that he could have the other $500 immediately if he demanded it, but that he said he would not demand it as he was satisfied with the responsibility of the purchaser. All this occurred, according to respondent's testimony, before 3:30 p. m. of said January 15, the day the brokerage contract was made, that contract having been made about noon of said day. Upon appellant's suggestion that he would like for Mr. Bostwick to examine the proposed contract of purchase, he and respondent at once went to Mr. Bostwick's office for that purpose. This interview resulted in an agreement that Mr. Bostwick should draw up an agreement in different form, providing for $500 immediate cash payment, $6,500 on or before January 25, being ten days hence, and $6,500 on or before January 25, 1907, the last payment to be evidenced by a bankable promissory note, or if not bankable, that certain leases should be placed in escrow with it. Such a paper was then drawn. As to what then occurred, respondent testified as follows:

"When the contract was drawn, which was about 5:30, I explained to Mr. Bostwick that I would get it signed now, if possible, but I thought it likely that Mr. Stirrat had gone from the office, to' which he said in a very brusque way, 'If that contract is not signed by 9:30 o'clock tomorrow morning, call the deal off.' I explained to Mr. Moeller that it would possibly be later than that the next day before I could get to

Mr. Stirrat, if I could not get him now, as he usually did not get to his office before 10 o'clock or 11, but that I would have it signed right now, if possible, and he made no reply. I went to Mr. Stirrat's office at once and found that he had left for the night. Mr. Stirrat has so much building on hand, and so many jobs under construction, that it is very difficult to locate him, but he did not return again to his office that evening. I left word for him to call me up as soon as he came to his office, and also 'phoned to the house, but I did not succeed in finding him, until the next day, about 10 o'clock. As soon as I explained the condition and facts to Mr. Stirrat, I handed him the agreement which Mr. Bostwick had prepared, and after reading the same over, he signed it, with one exception that was in the event that Mr. Moeller could not deliver the property free and clear from all encumbrances that Mr. Stirrat was to have his $500 back. I went at once, with the contract which was signed by Mr. Stirrat, and the $500 check to Mr. Bostwick's office, expecting to find Mr. Moeller there. I met no one in the office at that time. In a few minutes I returned and found the stenographer and Mr. Bostwick in his private office. I explained to Mr. Bostwick that I had the contract signed just as he had drawn it, with this one exception, that if the sale did not go through, that Mr. Stirrat was to have the deposit returned. To this Mr. Bostwick replied, 'Mr. Moeller has gone home and has instructed me to say the sale is off.' I said, 'Mr. Bostwick, you certainly don't mean anything of that kind, because we have made the sale, and we expect it to go through.' Mr. Bostwick said, 'That is all I know about it, Mr. Moeller has gone home and said the sale was off.' Mr. Bostwick made no objections to the alteration of the contract—simply said that the sale was off, and gave that as a reason for it, that I was too late. He claimed that I should have been there at 9:30 or before. I still insisted that the agreement was that I was to have until I could get Mr. Stirrat. I went out then, and tried to find Moeller, but could not find him. Called at his house, and also 'phoned several times, but Mr. Moeller has no place of business, except his house, and it was therefore very difficult to find him."

Under the above testimony and other testimony to which we have referred, the findings of the court were justified. A

purchaser was produced before 3:30 p. m., the time fixed, and he was ready, able, and willing to buy the property. Some modification of the terms was suggested and, in conformity with appellant's desire, they immediately repaired to the office of appellant's attorney to continue the negotiations, with the result above stated. The purchaser himself was not present at the interview and it became necessary for respondent to procure his signature to the newly prepared agreement of purchase. Although Mr. Bostwick stated that the agreement of purchase must be signed and returned by 9:30 the next morning, yet when respondent, immediately after that statement, appealed directly to appellant and stated the circumstances about the probable difficulty of quickly finding the purchaser and that he probably could not return before 11 o'clock the next day, he says appellant remained silent. A reasonable time to get the purchaser's signature was permissible. Under the circumstances appellant's silence should be taken as his consent. The purchaser himself testified at the trial that he was and still is ready, able, and willing to buy on the terms proposed. We think there was sufficient evidence to justify the court in finding that a competent purchaser was produced within the time, but that with appellant's consent negotiations merely as to terms of payment began at once, which negotiations were continued also by appellant's consent until the next day. The transaction thus became a continuous one after a competent purchaser was produced through the efforts of respondent. · The purchaser met every demand of appellant's within reasonable time. The change of terms as to payments was with appellant's consent. This was effected by negotiations directly through respondent as the broker, and thereby, in effect, became a part of the original brokerage contract.

· In view of the findings of the court, which we shall not disturb under the evidence, the judgment is affirmed.

FULLERTON, MOUNT, CROW, and ROOT, JJ., concur.