STATE v. R. C. WHITENER.

*Practice—Criminal Intent—Injury to property by a tenant—Fixtures.*

1. Where upon an appeal, the Supreme Court held that no offence was charged in the bill, by inadvertently overlooking the statute creating the offence, it is proper for the Superior Court to again try the defendant.

2. The word "wilful," when used in a statute creating a criminal offence, implies the doing of the act, purposely and deliberately, in violation of law.

3. Where an act to be criminal must be wilfully done, and a party does such act under a claim of right, he does not do it wilfully within the meaning of the law.

4. So, where a statute declared it criminal in a tenant during his term, to wilfully and unlawfully injure or damage the leased house, and a tenant removed from a leased house certain window sashes which he had placed in them, under a claim that they belonged to him, *It was held*, that it did not come under the meaning of the statute.

5. *It is intimated* that an awaygoing tenant has the right to remove fixture put on the premises by himself for his own convenience.

(*State* v. *Roseman*, 66 N. C., 634; *State* v. *Hanks*, 66 N. C., 613; *State* v. *Ellen*, 68 N. C., 281; *State* v. *Crossit*, 81 N. C., 579; *State* v. *Hause*, 71 N. C., 518, cited and approved. *State* v. *Bryan*, 81 N. C., 505, cited and distinguished).

INDICTMENT for injury to a house by a tenant, tried before *Avery, Judge,* and a jury, at Fall Term, 1885, of BURKE Superior Court.

The indictment was preferred under §1761 of The Code, which forbids any tenant, who shall, during his term, or after its expiration, wilfully and unlawfully demolish, destroy, deface, injure or damage any tenant house, inhabited house, or other out-house belonging to his landlord or upon his premises, by removing parts thereof, &c. The evidence shows that the defendant had been a tenant from year to year of Mrs. M. R. Caldwell, for four years prior to the 1st of January, 1885, and that he removed the sash from two windows in December, 1884. That the sashes were fastened into the windows by a strip, like that ordinarily used in fastening the sash into a window. The strips were held by shingle nails, driven about half up into the wood, which were

pulled out by the defendant, and the sash taken out.   The defendant proposed to prove, that there was no sash in the windows when he went into the occupancy of the house under his lease, and that he borrowed the sash from his brother, about two years before the removal, and hauled them away with his furniture when he gave up the possession, and subsequently returned them to his brother.   This evidence was objected to by the Solicitor, and was excluded by the Court, to which the defendant excepted. The counsel for the defendant asked the Court to charge the jury, that under the facts of the case as found and admitted, the defendant could not be convicted; but the Court refused to give the instructions, and charged the jury that upon the facts admitted to be true, the defendant was guilty.   The defendant excepted—there was judgment against him, and he appealed.

Attorney General, for the State.
Mr. S. J. Erwin, for the defendant.

Ashe, J., (after stating the facts).   This case was before us heretofore, and reported in volume 92 at page 798.   The act of 1883, §1761 of The Code, under which the indictment was found, was inadvertently overlooked by the Court, in consequence of not being placed under the title of Crimes, and not having been called to the attention of the Court at the time. We think it was altogether proper for the Court below, in discovering the mistake, to submit the matter to the jury with instructions under §1761.   But we are of opinion there was error in the instructions given, and the refusal to admit the evidence proposed by the defendant, with respect to the circumstances under which the sash was placed into the window and taken out. The evidence, we think, had a material bearing on the criminality of the act.   The facts as found and admitted, clearly bring the act of the defendant within the words of the statute, but they do not bring him within its meaning and spirit.   The indictment, following the statute, charges that the act of removing

the sash, was unlawful and wilful. Conceding it to have been unlawful, it does not follow that it was *wilful.* The word wilful, used in a statute creating a criminal offence, means something more than an intention to do a thing. It implies the doing the act purposely and deliberately, indicating a purpose to do it, without authority—careless whether he has the right or not—in violation of law, and it is this which makes the criminal intent, without which one cannot be brought within the meaning of a criminal statute. In *The State* v. *Roseman,* 66 N. C., 634, where the defendants were indicted for unlawfully and *wilfully* demolishing a public school house, and they offered some evidence of their possession under a person who claimed title to the *locus in quo,* which was rejected by the Court, READE, J., speaking for this Court, said : "If the defendants were in the adverse possession of the school house, and *bona fide* claiming it as their own, it certainly was not a *crime* in them to pull it down. It was important, therefore, for them to prove that fact, for the words of the statute are 'unlawfully and *wilfully*' demolish, &c. Upon the supposition that the record which was offered and rejected, was not sufficient evidence of title upon an issue directly involving title, it was certainly evidence tending to explain the possession of the defendants, and the *bona fides* of what they did."

The object of the Act of 1866, The Code, §1120, was to keep off intruders, and subject them to indictment if they invaded the possession after being forbidden, and when a person *believing* land to be vacant, made an entry, procured a warrant and survey, and entered upon land in possession of another, it was held, that although the land was not vacant, he was not guilty of a civil or forcible trespass. *State* v. *Hanks,* 66 N. C., 613. If one, under a claim, enters upon land in possession of another, after being forbidden to do so, he was held not to be guilty of a *wilful trespass. State* v. *Ellen,* 68 N. C., 281. If one enters upon the land of another under a *bona fide* claim of right, he is guilty of no criminal offence, *State* v. *Crossit,* 81 N. C., 579,

so if one enter or travel over the land of another, under a *bona fide* claim of right, it was held he was not criminally guilty of a trespass under the statute, although he was mistaken in his right, but *believed* he had the right to do so, because he and the former owners of the land had done so for sixteen years—*State* v. *Hause*, 71 N. C., 518—and in a Tennessee case, *State* v. *Dodson*, 6 Caldwell, which was an indictment under a statute similar to our Act of 1866, the Court say : " If one commit a trespass upon the land of another, his good faith or ignorance of the true right or title, will not exonerate him from civil responsibility for the act. But when the statute affixed to such a trespass the consequence of a criminal offence, we will not presume that the Legislature intended to punish criminally, acts committed in ignorance, by accident, or under claim of right, and in the *bona fide* belief that the land is the property of the trespasser, unless the terms of the statute forbid any other construction."

But it is contended on the part of the State, that the case of *State* v. *Bryan*, 81 N. C., 505, if it does not overrule the decis- *Bryson* ions of the Court as above cited, at least qualifies them, so that they can have no application to this case. But we have carefully reviewed that case, and think it is in no way in conflict with them. In *Bryan's* case, the defendant asked the Court to charge the jury, that if the defendant believed he had the right to enter or travel over the prosecutor's land, because he and the former owners and tenants of the land had done so for ten or eighteen years, he would not be guilty. The fact was, that the only user of the way through the prosecutor's land by the defendant and those under whom he claimed, was just before the commencement of the action, and he had been forbidden to do so.

. This Court held, that there was no error, and the reason given was, that "if a party be indicted for a trespass on land, and in the proof there be no evidence of a claim of title, or *such facts and circumstances* upon which he could *reasonably* and *bona fide believe* he had a right to do what he did, the Court will not submit an inquiry to the jury as to a mere abstraction, and therefore

38

we hold there was no error in the refusal to charge the jury as requested."

The gist of the decision is, that to constitute a valid defence in such a case, there must be a claim of title or *facts* shown upon which the defendant could, *reasonably* and *bona fide*, believe he had the right. Now to apply the principle enunciated in these cases, and even in the last. The defendant Whitener offered to show that the windows had no sash in them when he entered the house under his lease, and about two years before he removed them, he borrowed the sash from his brother and put them in, where they remained until just before the expiration of the lease, when he took them out by drawing a few small shingle nails, with which the strips holding them in were fastened. Did not the defendant have a reasonable ground to believe that the sash belonged to his brother, and that as they had been loaned to him for his own use, it was his right and duty to take them out and return them? We venture to say, that there is not a man, who is not a lawyer, that would hesitate to say he certainly had the right to do so, and even a lawyer, under the more recent authorities upon the subject, might be excused for holding that a tenant has the right to remove, during the continuance of his term, such fixtures as he may have made to the freehold for his convenience and comfort. The question has never been decided in this State in any case where the question was directly presented, as to the rights of a *tenant* to remove such annexations to the land. But it has been so held in New York and Massachusetts. *King* v. *Wilcomb,* 7 Barb., 263, 266, and *Ware* v. *Hinds,* 4 Gray, 256, 270, 271. And Tyler, in his work on Fixtures, after reviewing these and other authorities, and in view of the general tendency of the courts in relaxing the principles of the common law with regard to tenants, gives it as his opinion, that the question whether annexations to the freehold by tenants were removable, would depend on circumstances. For instance, he says, " if the house was destitute of windows when the tenant took his lease, and the opening were filled for his own use and convenience, he would

doubtless have the right to take them away at the end of the term."

We have referred to this authority not to decide the questions to which they refer, for we do not think it necessary in this case, but to show that upon a matter where lawyers and jurists may differ, or have a doubt, certainly one who is not a lawyer, should not be held criminally responsible for acting *bona fide* on his own untutored opinion, when it accords with justice and the common sense of mankind. Our conclusion is, there was error. This opinion must therefore be certified to the Superior Court of Burke county, that a *venire de novo* may be awarded to the defendant.

Error.                                                Reversed.