## THE STATE v. J. E. HOWELL.

*Injury to Buildings— Trespass—Landlord and Tenant—Intent—*
*Possession..*

The prosecutor, claiming under a deed from an admitted former owner,
placed a tenant in possession of the premises, who, before surren-
dering to his landlord, went out, and, taking a lease from another
claimant, went back as his tenant, but did not continue to occupy
the house; thereupon, the prosecutor fastened up the house, leav-
ing some personal property in it, and went away.   The defendant,
in prosecutor's absence, and with knowledge of the circumstances,
broke open the building and otherwise injured and defaced it, and
refused to leave when ordered.    He was indicted for wilful
injury to the building.   *The Code,* § 1062.   *Held,* (1) that the ten-
ant could not divest the possession of his landlord by his attempted
attornment to the defendant, and that the prosecutor had the legal
possession when defendant entered; (2) that the defendant's action
was unlawful and wilful, and he could not justify it by proof that
he entered in good faith and under claim.

This was an indictment for wilful injury to a house, &c.,
tried before *Bynum, J.,* at the Fall Term, 1890, of the Superior
Court of MONTGOMERY County.

It was in evidence, on the part of the State, that one Seth Andrews died in Montgomery County on the 6th day of June, 1889; that some time before his death he had executed to G. A. Graham a deed in fee-simple for the house and land on which the alleged trespass was committed, and put him in possession; that Andrews was living with Graham at the time of his death; that after Graham was put in possession, and before the death of Andrews, he (Graham) rented the house to one Rhines, who paid him rent up to the time he left (December 20th, 1889), at which time Graham went to the house and fastened it up, putting in it some tools and fodder; that while Rhines was in possession, as the tenant of Graham, and after the death of Andrews, defendant J. E. Howell went to the house; that Rhine went out, and defendant then leased to him as his tenant, and he again went into possession; that the doors were locked and barred, and the windows buttoned—had planks nailed across them; doors were all fastened inside; that Graham had wheat sowed in the field adjoining the house; that Graham, by himself and his tenant Rhine, had been in possession twelve months preceding January 4th, 1890, the day of the alleged trespass; that there was a notice stuck up on a tree in the yard (by Graham) forbidding trespassing on the property, and especially forbidding the defendant J. E. Howell.

On January 6th, 1890, Graham went to the premises and found the defendants J. E. Howell and W. M. Howell in the field, fifty or sixty yards from the house, and they refused to leave when ordered to, saying it was his (J. E. Howell's) house; that Graham did not take possession for fear of a difficulty; that he asked J. E. Howell who broke in the house, and he replied that he did; that W. M. Howell said that he tore down the notice; that the front door looked like it had been burst open and a piece of the facing torn off; two of the sleepers in one of the rooms had been taken up, and the defendant J. E. Howell's mules were in there; that

the fodder which had been left in the house was tram-
pled, and tools had been carried away to the house of a
brother of Graham; that J. E. Howell lived in Anson
County, about fifteen miles from the property; that he left
for home on the 6th of January, and left his son, the defend-
ant W. M. Howell, in possession; that, on January 7th, a
warrant was issued against the above-named defendants, and
was executed only on the defendant W. M. Howell; that,
after he was arrested, Graham entered and took possession
of the premises.

It was in evidence for the defendant that Andrews, prior
to the date of the execution of the deed to Graham, had
executed to defendant J. E. Howell a deed conveying to
him the remainder in the house and land, after the death
of the said Andrews, and that this was known to Graham.

J. E. Howell testified, in his own behalf, that, after
Andrews died, he rented Rhine the place in June, 1889;
that he (defendant) went there on December 26th, 1889, and
found no one there; that he met Graham, asked him if he
was in possession; that Graham gave no answer; that he
then went to his lawyer and told him how it was, and he
advised him to take possession; that he went back, found no
one there, and took possession; the door was "*pulled to*" and
fastened with a piece of bridle-bit and a little chain on the
outside, running from the door to the door-facing; that he
unfastened this and went in; that the back door was barred
up; that he did not break in the door or damage the prop-
erty; he considered it his; that he was by himself, neither
of the other defendants being with him; that this was
Saturday, January 4th, 1890; that Graham came on Mon-
day, the 6th, and called him to the fence, and began talking
about it; that he (defendant) told him (Graham) he was not
coming out of there, as it was his (defendant's) property.

Upon cross-examination, he said that Graham put Rhine
into possession; his time was out, and he gave him (defend-

ant) possession, and he then rented to him (Rhine); that the wheat in the field did not belong to him (witness); did not know whose it was or who had sowed it; that he saw the notice when he passed by, but did not read it; heard it was to forbid persons from getting fruit.

Upon the close of the evidence, the Court intimated that defendant could not be convicted on the first count, and the Solicitor entered a *nol. pros.* as to that count.

The defendant's counsel asked the Court to instruct the jury that if defendant went and took · possession under a *bona fide* claim of right, and that he believed he had a right to enter and take possession under his deed from Andrews, he could not be convicted.

The Court refused this instruction, and instructed the jury that if they found the facts to be that Andrews had con-veyed a fee-simple in the land to Graham, and put him in possession, and Graham had rented it to Rhine, and, during the time Rhine was in possession as a tenant of Graham, the defendant J. E. Howell went to the house and Rhine went out and immediately went in again as a servant of Howell, this did not transfer the possession to Howell from Graham, and that the possession of Rhine could still be the possession of Graham; and that if Rhine stayed there until December 20th, paying rent to Graham, and then left, and immediately Graham went and fastened up the house, put his tools and fodder in it, and had wheat sowed in the field, and that if the defendant came there and burst open the door, and split off part of the facing, and took up the sleepers in one of the rooms, and put his mules in, he would be guilty; that a question of a *bona fide* belief that defendant was the owner and had a right to enter was not the question in this par-ticular case; that the burden was on the State to satisfy the jury beyond a reasonable doubt of these facts, for they should acquit the defendant; that if they found the facts to be as testified to by the ·defendant—that he went there, found no

one, and opened the door without any injury to the door or house—he would be not guilty.

There was a verdict of "guilty" as to J. E. Howell, and "not guilty" as to W. M. Howell. Rule for a new trial for refusal of the Court to charge the jury as requested, and to the charge as given. Rule discharged. Motion in arrest of judgment. Motion overruled.

The Court gave judgment, fining the defendant one dollar and costs, and the defendant appealed.

*The Attorney General,* for the State.
No counsel for the defendant.

MERRIMON, C. J.: The tenant of the prosecutor in possession of the house could not, by simply going out of the same and purporting to take a lease thereof from the defendant and going back into the house professedly under such lease, thus rid himself of the relation as tenant to the prosecutor and put the latter out of possession and give the defendant the possession to the prejudice of the landlord, the prosecutor. He could put an end to his relation and possession as tenant ordinarily, and in this and like cases, only by a surrender of the possession to the landlord himself. *Springs* v. *Schenck,* 99 N. C., 551, and cases there cited. Hence, the defendant got no benefit or advantage by the supposed lease he undertook to make to the tenant of the prosecutor—it was a mere fruitless shift.

The possession of the house was in the prosecutor at the time the defendant took possession as alleged, and defaced and injured the same. He was not there in person, but he had been lately theretofore, had stored fodder and other things in it, and had closed and fastened it by suitable fastenings. The defendant took possession of it without his permission and against his will—the evidence tended to prove that he broke the door open, defacing parts of it to

some extent. If it be granted that the defendant had the better title to the house, he had no right to take violent, injurious possession of it while the prosecutor was so in possession thereof. His action was unlawful, and, if done *wilfully*, was a violation of the statute (*The Code*, § 1062), which makes it a misdemeanor to *unlawfully* and *wilfully* "deface, damage or injure any house," etc. So that, although the defendant may have believed in good faith that he had the right to enter and take possession of the house, but did so unlawfully and wilfully, he would be guilty. A party, no doubt, may ordinarily destroy, deface or injure his own property when it is in his possession and under his complete control—when he may make such disposition of it as he may see fit—but it is otherwise when it is in the possession of and claimed by others. The purpose of the statute is to prevent the unlawful and wilful injury to houses and other property specified in it, no matter to whom the same may belong. A party commits no trespass—does not unlawfully destroy, deface or injure his own property, ordinarily, when he has the same in his possession and complete control, and the statute does not apply to such case. But it does apply when the injury involves a trespass and is wilful. It is wilful, when the party does the injury charged deliberately, of purpose and without regard to whether it is done rightfully or wrongfully. The manner, the occasion, the circumstances attending the doing of the injury make evidence going to prove that the intent was wilful or otherwise. *State* v. *Hovis,* 76 N. C., 117; *State* v. *Watson,* 86 N. C., 626; *State* v. *Piper,* 89 N. C., 551; *State* v. *Marsh,* 91 N. C., 632; *State* v. *Whitener,* 93 N. C., 590; *Mosseller* v. *Deaver,* 106 N. C., 494.

The defendant was not entitled to have the special instruction asked for given to the jury. The general exception to the "charge as given" was no exception. There is no error.

Affirmed.