CONNOR, J., concurring.
CLARKSON, J., concurring in result.
STACY, C.J., dissenting.
Controversy without action (C.S., 626), to determine the title to land and to remove a cloud from title, submitted upon the following statement of facts agreed:
1. On or about 20 July, 1912, John A. Weathers filed with the clerk of Superior Court of Harnett County a writing purporting to be a petition for the adoption of Irma Johnson, for life, a copy of which is *Page 432 
hereto attached and marked Exhibit "A." And on 26 July, 1912, the clerk of Superior Court entered an order purporting to be an order of adoption and issued letters of adoption, of which order and letters, a copy is attached hereto and marked Exhibit "B." The exhibits constitute all the proceedings in said case. After the adoption proceedings, Irma Johnson, lived in the home with John A. Weathers and his wife and was thereafter known as Irma Johnson Weathers, until the death of the said John A. Weathers and his wife.
2. Thereafter, on or about 6 April, 1922, the said John A. Weathers died intestate and at the time of his death was seized and possessed in fee of the lands described in paragraph 6 of the complaint of Lalah M. Truelove and others therein.
3. At the time of his death, the said John A. Weathers left surviving him Irma Johnson Weathers, the adopted daughter; he also left surviving him the plaintiffs, Lalah M. Truelove, Corrina Blalock, Vallie Weathers, Hepsie A. Holt, Frances Rosser, the heirs of Bettie Lawrence, and the heirs of Nannie Gunter, of whom Lalah M. Truelove, Corrina Blalock, Vallie Weathers and Nannie Gunter were full sisters of the said John A. Weathers and the said Hepsie A. Holt, Bettie Lawrence and Frances Rosser were half-sisters of the said John A. Weathers; and left surviving him no child or issue of any child save and except that he was survived by the said Irma Johnson Weathers.
4. Shortly thereafter Irma Johnson Weathers died intestate, leaving surviving her, Minnie Parker and Lucian Johnson, her natural mother and father, Haze Johnson, her whole brother, Lizzie Parker and Frances Parker, her half-sisters, and Ernest Parker, a half-brother. All parties to this action.
5. After the birth of Haze Johnson and Irma Johnson Weathers, Lucian Johnson and his wife, Minnie Rollins Johnson separated themselves from each other and never lived together again, and never obtained a divorce. And after the said separation Minnie Rollins Johnson associated herself with Frank Parker without a legal marriage, and to that association were born the half-sisters, Lizzie Parker and Frances Parker and the half-brother, Ernest Parker, who are the children of Minnie Parker and Frank Parker; neither of whom are of the blood of John A. Weathers or in any way related to him by blood.
6. The defendant, Haze Johnson, since this suit has been instituted, by regular warranty deed of conveyance, conveyed all of the land described herein to the defendant, Victor R. Johnson, and the defendant, Victor R. Johnson, has by regular deed of conveyance conveyed two-thirds undivided interest in the said land to the defendant, C. W. Sandrock; all parties of this suit. *Page 433 
Claims of the parties:
1. The defendant, Victor R. Johnson, claims title to one-third undivided interest in the land described herein, and the defendant, C. W. Sandrock, claims title to two-thirds undivided interest in the said land under the deed from Haze Johnson, the nearest collateral relative to the intestate, Irma Johnson Weathers.
2. The defendants, Lizzie Parker, Frances Parker and Ernest Parker, claim title to three-fourths of the land, as collateral heirs to Irma Johnson Weathers.
3. The parties hereto, Lucian Johnson and Minnie Parker, claim title to the land as tenants in common, as the sole successors to the title of Irma Johnson Weathers.
4. Lalah M. Truelove and the other brothers and sisters and their legal representatives, who are parties hereto, claim title to the land by reason of their collateral inheritance from John A. Weathers.
Exhibit "A" is as follows:
NORTH CAROLINA — HARNETT COUNTY. In the Superior Court.
J. A. Weathers } v. } Petition for Adoption. L. J. Johnson and Martha Johnson. }
To F. H. Taylor, clerk Superior Court of Harnett County:
The petition of J. A. Weathers of said county and State, respectively showeth:
1. That Irma Johnson is a female child of the age of five years, and is at present residing with the said J. A. Weathers of said county.
2. That L. J. Johnson and Martha Johnson, father and mother of the child are living.
3. That Martha Johnson, mother of the child, has been living away from her husband and child for the past two years, and takes no interest whatever in said child.
4. That L. J. Johnson, father of the child is not capable of properly providing for said child and gives his consent to the adoption of said child by said J. A. Weathers.
5. That the said child has no estate of any kind, either real, personal or mixed, and is entirely dependent on said J. A. Weathers, with whom the said child now resides.
6. The petitioner desires to adopt the said child for life, to which adoption L. J. Johnson, father of the child consents. *Page 434 
Wherefore, the petitioner prays that he may be allowed to adopt the said child for the life of said child, and that letters of adoption may be granted him by the court.
J. A. WEATHERS, Petitioner.
This 26 July, 1912.
Exhibit "B" is as follows:
J. A. Weathers } v. } Order of Adoption. L. J. Johnson and Martha Johnson. }
This cause coming on to be heard upon the allegations of the petitioner, and being heard, and it appearing to the court that Irma Johnson is a child without any estate, and that Martha Johnson, mother of the child is living away from her husband and child and takes no interest whatever in said child, and that L. J. Johnson, father of the child is not capable of properly providing for said child and consents to the adoption of said child by said J. A. Weathers, who is a proper and suitable person to have the custody of said child, and who desires to adopt said child for life:
It is therefore, ordered and adjudged by the court that letters of adoption be, and the same are hereby granted to the said J. A. Weathers, to the end that the relations of parent and child be established for life between the said J. A. Weathers and the said Irma Johnson, with all the duties, powers and rights belonging to the relationship of parent and child. F. H. TAYLOR, Clerk Superior Court.
This 26 July, 1912.
NORTH CAROLINA — Harnett County Superior Court.
LETTERS OF ADOPTION.
STATE OF NORTH CAROLINA, to all to whom these shall come — Greeting:
J. A. Weathers, having applied by petition to the undersigned clerk of the Superior Court of Harnett County, for the adoption of Irma Johnson, a female child for life; and the said J. A. Weathers having satisfied the undersigned that he is a suitable person to have charge of said child; and an order of court having been made granting the petition of said J. A. Weathers:
These are therefore to authorize and empower the said ___________ to take charge of the said orphan for life to the end that the relationship of parent and child may be fully established between said J. A. Weathers and said Irma Johnson, a female child, agreeably to an order made by the court.
Witness my hand and official seal, this 26 July, 1912.
F. H. TAYLOR, Clerk Superior Court. *Page 435 
His Honor was of opinion that upon the death of John A. Weathers the land in controversy descended to Irma Johnson Weathers and upon her death to her brother Haze Johnson as her only heir at law; and thereupon it was adjudged that by the conveyance of Haze Johnson to Victor R. Johnson and by the latter's conveyance of a two-thirds interest to Sandrock, the title passed to Victor R. Johnson and Sandrock in the proportion of one-third and two-thirds respectively, as set out in the statement of facts, and that they are the owners and entitled to the possession of the land. The plaintiffs and all the defendants except Haze Johnson, Victor R. Johnson and C. W. Sandrock excepted and appealed.
On 26 July, 1912, the clerk of the Superior Court of Harnett County issued letters of adoption purporting to establish the relation of parent and child between John A. Weathers and Irma Johnson, who at that time was five years of age. Thereafter Irma lived in the home of Weathers and his wife and was known as Irma Johnson Weathers. John A. Weathers died intestate on 6 April, 1922, seized of about eight hundred acres of land. He left no issue; but Irma's death occurred a few hours after his. He was survived also by the plaintiffs, who are his brothers and sisters. Irma was survived by her father and mother, one illegitimate half-brother, two illegitimate half-sisters, and one whole brother, Haze Johnson, whose interest in the land, if any, has passed by conveyances to Victor R. Johnson and C. W. Sandrock. All these are parties to the action and represent the several conflicting claims of title. The father and mother of Irma contend that under the provisions of C.S., 185, the order of adoption enabled her to inherit, and that she did inherit, the real estate of John A. Weathers in like manner and to the same extent as if she had been his actual child; also, that upon her death the title she had thus acquired vested in them as tenants in common by virtue of the proviso in the sixth canon of descents. C.S., 1654(6). Haze Johnson and his successors in interest say that Irma's estate was not derived or transmitted to her from an ancestor, but acquired by force of the order of adoption, and that her title therefore descended under the fifth rule to Haze Johnson as her next collateral relation. On the other hand, the plaintiffs insist *Page 436 
that the adoption proceeding is fatally defective and utterly void; that Irma acquired no title to the land; and that as the heirs at law of John A. Weathers they are entitled to his real estate. At the threshold of these contentions we are confronted with the grave question whether the proceeding is void and therefore subject to collateral attack.
The procedure for the adoption of minors is prescribed by statute: a petition must be filed; there must be parties of record; and with the requisite consent an order may be made granting letters of adoption. C.S., ch. 2. Section 183 provides that the parent or guardian, etc., must be a party to the proceeding. We think the words "the parent," should not be interpreted, if both parents are living, to include the father and exclude the mother, for these several statutes construed as a whole seem to import that ordinarily both the parents if living shall be parties. The petition must set forth their names; and if both are living their consent is as a rule prerequisite to an order granting the letters; or, if one is dead, the consent of the survivor. If their consent is essential they must have an opportunity to be heard; and to be heard in a judicial sense and to be bound by the order they must be parties to the proceeding.
At common law parental rights were vested in the father, and the mother had no legal interest in the custody or earnings of her children; but modern decisions have relaxed the common-law doctrine and have indicated a manifest tendency to equalize the rights of custody and control. True, under our own decisions the father is considered in law as the head of the household and as such entitled in the first instance to the custody of his child, — a right necessarily springing from his duty to provide for the child's protection, maintenance, and education. But this right is not absolute; circumstances often occur in which it may be questioned; and beyond doubt the mother's natural interest in the welfare of her children is not less profound than that of the father. Newsome v. Bunch, 144 N.C. 15;In re Fain, 172 N.C. 790. A father may by deed dispose of the custody and tuition of his unmarried child for such time as it may remain under the age of twenty-one years; but only with the written consent and privy examination of the mother, if she be living. He may make such disposition by his last will and testament in writing; but only if the mother be dead. If the father die without exercising the right of appointment, or if he wilfully abandon his wife, the mother may in like manner dispose of the custody and tuition of her unmarried infant child. 3. C.S., 2151. In all these statutes, and in others, the Legislature has recognized the human as well as the legal relation between parent and child, the paramount and the subordinate, the present and the inchoate, rights of the father and the mother, and has wisely provided that both the parents shall have *Page 437 
adequate opportunity to be heard and, except in rare cases, shall give their consent before the legal relation is severed or the domestic circle is broken. We cannot yield our assent to the proposition that because Irma resided with Weathers when his petition was filed it was not necessary to make her parents parties to the proceeding. The statute contemplates an adjudication concerning adverse interests. And the failure to observe the statutory requirements as to notice and consent is not a mere irregularity which is immune from collateral attack, for they are jurisdictional and without them, as a general rule, a valid order of adoption cannot be made.
The plaintiffs contend that these requisites are wanting; the defendants contend that we should proceed upon the presumption that the court had jurisdiction of the parties and that the proceeding is regular. The proceedings, whether it be deemed judicial or a proceeding in rem or quasiin rem, calls for the exercise only of such judicial functions as are conferred by chapter 2 of the Consolidated Statutes and to this extent the jurisdiction of the clerk is limited and special. "The jurisdiction in such cases both as to the subject-matter of the judgment and as to the persons to be affected by it must appear by the record; and everything will be presumed to be without the jurisdiction which does not distinctly appear to be within it. The power to enter a decree of adoption conferred upon a court of general jurisdiction is a special and summary power of this class, and the facts essential to the exercise of the special jurisdiction must appear upon the record. To give a decree of adoption any force or effect, jurisdiction must have been acquired by the court, first, over the person seeking to adopt the child; second, over the child; and third, over the parents of the child; and there can be no presumption that jurisdiction was obtained over the parent of the child if the record of adoption is silent on the subject." 1 R. C. L., 603, sec. 11.
In the light of this principle let us see whether it appears upon the record that the court had jurisdiction over Irma's father and mother. When the clerk made the order of adoption the only paper before him was the petition. The petition, the order of adoption, and the letters of adoption constitute the entire proceeding. Statement of facts, par. 1. It does not affirmatively appear that the father and mother of the child were "parties of record in this proceeding," as the statute requires. Sec. 183. Indeed, it does not affirmatively appear that either of them was a party. No summons or other similar notice was issued and served; there was no voluntary appearance; and of course the caption of the petition did not supply this defect. It is to be noted that the order of adoption contains no recital of the service of process or the appearance of the child's parents. In the order there is a recital of the father's consent to the adoption, and from this, it is said, his appearance may be *Page 438 
inferred; but as the order purports to repeat and approve each allegation of the petition, including that of the father's consent, in the absence of any other suggestion of the father's presence or appearance in the proceeding, we may reasonably infer that the clerk assumed the petition to be true and upon this assumption adjudged the adoption without further inquiry or investigation. In any event, it does not affirmatively appear that the father was present or represented in the proceeding. In Doyle v.Brown, 72 N.C. 393, it is said: "Where a defendant has never been served with process, nor appeared in person or by attorney, a judgment against him is not simply voidable, but void; and it may be so treated whenever and wherever offered, without any direct proceedings to vacate it. And the reason is, that the want of service of process and the want of appearance is shown by the record itself, whenever it is offered. It would be otherwise if the record showed service of process or appearance when in fact there had been none. In such case the judgment would be apparently regular and would be conclusive until by a direct proceeding for the purpose it would be vacated." Carter v. Rountree, 109 N.C. 29; Moore v.Packer, 174 N.C. 665.
It is not pretended that Martha Johnson (or Minnie Parker), the mother, was a party of record; but the defendants seek to relieve the necessity of her consent and the service of process on her by alleging that she had abandoned her child and had forfeited her rights and privileges with respect to its care, custody, and services. In 1 C. J., 1387(76) it is said: "To constitute such an abandonment by a parent as will deprive him of the right to prevent the adoption of his child, and dispense with the necessity of his consent, there must be some conduct on his part which evinces a settled purpose to forego all parental duties. But merely permitting the child to remain for a time undisturbed in the care of others is not such an abandonment." By the terms of the statute it is necessary that such abandonment be wilful, — that is, accomplished purposely and deliberately in violation of law. S. v. Whitener, 93 N.C. 590. The clerk's finding (which is the recital of another allegation in the petition), as set forth in the order of adoption, is in these words: "Martha Johnson, mother of the child, is living away from her husband and child and takes no interest whatever in said child." It does not appear upon the face of the record whether her absence was compulsory, negligent, or wilful; and in a proceeding of this kind inferences cannot supply the want of an affirmative adjudication. "When a petition alleges abandonment of a child it must make a case strictly within the provisions of the statute relating to such abandonment." 1 C. J., 1385 (61).
The mother had no actual or constructive notice of the proceeding and no opportunity to be heard on the question of abandonment. It is held in a number of cases decided elsewhere that the existence of *Page 439 
abandonment as ground for an adoption without parental consent must be judicially determined and that notice to the parent of the adoption proceeding is essential to cut off his rights. 1 R. C. L., 628 (39);Schiltz v. Roenitz, 21 L.R.A. (Wis.), 483; Beatty v. Davenport, 122 A.S.R. (Wash.), 937; ibid., 13 Anno. Cas., 585 and note; In re Cozza, 31 Anno. Cas. (Cal.), 214 and note, page 222. Such notice may not be necessary in every case; but when the parent, as in the case at bar, is within the jurisdiction of the court and subject to its process, an order of adoption based upon his alleged abondonment [abandonment] should not ordinarily be held conclusive against him unless he has had notice of the proceeding and an opportunity to be heard in defense.
Upon the record as it has come to us we are of opinion that neither the father nor the mother of Irma Johnson was a party to the adoption proceeding within the contemplation of the statute, and that the clerk had no jurisdiction of their person. Having no jurisdiction of their person he had no jurisdiction of the subject-matter: consent is essential to the order of adoption (sec. 184), and when the statute requires it to be given jurisdiction of the subject-matter cannot be acquired without it. 1 C. J., 1384 (57); In re Cozza, supra, note, page 221.
But it is contended on behalf of the defendants that John A. Weathers voluntarily entered into the contract of adoption, and during his lifetime recognized the relation thus created, and that after his death his heirs at law should not be permitted to avail themselves of a departure from the directions of the statute to defeat the rights of the child, and 10 R. C. L., 764 (81) is cited in support of the position. The principle no doubt applies in case of a mere technical disregard of the statute; but as the clerk had acquired no jurisdiction his order and letters of adoption are not simply irregular; as we have said they are void. In consequence they were binding neither on the father and mother nor on the adopting parent, because estoppels must be mutual; and if not conclusive against the parties, the order is not conclusive against their privies. Ferguson v.Jones, 11 A.S.R., 808, and cases cited in note, page 821; 1 C. J., 1393;Doyle v. Brown, supra; Kissam v. Gaylord, 46 N.C. 294, 298; Peebles v.Pate, 90 N.C. 348; Dudley v. Jeffress, 178 N.C. 111.
We do not concur in the argument that because the father and mother did not formally object to the letters of adoption during the lifetime of John A. Weathers they impliedly assented thereto and may now express their approval and thereby impart vitality to the clerk's order. This order is void ab initio; and the title to the land vested at the instant John A. Weathers died. It follows that the subsequent consent of the father and mother could neither divest the title nor confer jurisdiction upon the court. *Page 440 
We must not be understood as disparaging in any respect the legislative policy of providing for the adoption of minor children. That its wisdom is apparent is clearly expressed in these words: "Under them (adoption laws) innocent, parentless and abandoned children are withdrawn from the charity of public institutions and provided with comfortable homes and affectionate foster parents. Unfortunate children, whose parents, through overwhelming adversity, or the infirmities of their nature, are unable to care and provide for them, are placed in cheerful homes under the care and control of adoptive parents willing and able to provide for their protection and comfort." Estate of McKeag, 99 A.S.R., 80, 84. The approval of this policy is commendable. No less commendable is observance of an elemental principle which is designed to protect minor children from influences and associations that are vicious or immoral; and the principle cannot be affected in this instance by the alleged lapse of the mother.
In our opinion the order of adoption is void and subject to collateral attack; and as the plaintiffs have succeeded to the title of John A. Weathers they should be adjudged the owners of the land in controversy.
Error.