IN THE MATTER OF KIMBERLY DINSMORE

No. 7718DC413

(Filed 20 June 1978)

1. **Parent and Child § 1— termination of parental rights—willful failure to support—insufficiency evidence**

Even if the evidence in an action to terminate parental rights was sufficient to support the court's finding that respondent mother had not been continuously sick and disabled as she claimed, the evidence was insufficient to

support the court's finding that the mother's failure to contribute adequate financial support for the child for over six months while the child was in the custody of the county department of social services was "willful" within the purview of former G.S. 7A-288(3) where the court made no inquiry into the mother's ability to comply with a court order that she pay $10.00 per week for support of the child, and the evidence showed that the mother was an alcoholic, she had lost her job as a maid for excessive absenteeism, and she lived with her boyfriend.

2. **Parent and Child § 1— termination of parental rights—"intent" to constructively abandon**

> The trial court's finding that a mother had shown an "intent to constructively abandon" her child for a period in excess of six consecutive months prior to the hearing was insufficient to support an order terminating the mother's parental rights under the provisions of former G.S. 7A-288(1) allowing such termination upon a finding that the parent had abandoned the child for six consecutive months prior to the hearing or that the child was an abandoned child as defined by G.S. Ch. 48.

Judge VAUGHN dissents.

APPEAL by respondent from *Haworth, Judge.* Judgment entered 26 January 1977 in District Court, GUILFORD County. Heard in the Court of Appeals 2 March 1978.

On 19 November 1976, Sonia Willinger, social worker with the Guilford County Department of Social Services, filed a juvenile petition alleging that Kimberly Dinsmore, born 23 June 1972,

> ". . . has been in custody of the Guilford County Department of Social Services since December 27, 1973, on which date the child was found to be a neglected child: That in the time the child has been in the custody of the Department of Social Services, neither the mother nor the father has ever initiated plans or responded to attempts by the Department of Social Services to plan for a return of said child; neither has ever initiated plans or responded to attempts by the Department of Social Services to plan for the return of the child, or for making a home for the child; the mother has not refrained from the use of alcohol as ordered by the court, has wilfully not contributed financial or any other support for the child as ordered by the Court since April, 1976; that she is now living with a boyfriend; that these and other facts show that the mother and father of said child have abandoned said child

for more than six consecutive months prior to this special hearing; wherefore

Petitioner prays the court to hear the case to determine whether the allegations are true and whether the child is in need of the care, protection or discipline of the State, and to terminate parental rights of the father and mother."

The record reveals that respondents were properly before the court, and there is no question with reference to the court's having jurisdiction of the parties and the subject matter. The respondent, Calvin Amburgey, father of Kimberly Dinsmore, did not appeal.

Petitioner's evidence tended to show that in July 1973, respondent requested services from the Guilford County Department of Social Services, in that she was going to the hospital in the fall for surgery and requested foster care for her children. At that time, respondent discussed with her caseworker other problems, including undisciplined behavior of her children, financial difficulties, and housing needs.

In October 1973, a homemaker from the Department of Social Services and respondent's father provided supervision for the children in their home to avoid foster care placement during respondent's hospitalization and the week thereafter. During this month, the Department of Social Services received numerous complaints from the city schools regarding truancy of respondent's children. The caseworker visited the home and found respondent very drunk. Between 1973 and 1976, several hearings were held to reevaluate the home situation of respondent and her children, but none resulted in the return of Kimberly to respondent's custody due to her continued alcoholism. Respondent has been hospitalized on several occasions since 1973 for alcoholism and has been found drunk by the social workers on several occasions, the latest occurrence being in January 1976.

Each social worker counseled with respondent on the actions which the courts had ordered her to take in order to regain custody of her child, including remaining sober and submitting to counseling and rehabilitative training so that she could establish a home for Kimberly; weekly counseling sessions were scheduled, but respondent was often drunk and unable to attend.

In re Dinsmore

In 1975, respondent was ordered by the court to pay $10.00 per week toward the support of Kimberly. In response to this order, a sum of approximately $200.00 was paid between August 1975 and April 1976. Respondent was fired from her job as a maid in May 1976 due to excessive absenteeism. The caseworker was advised that the absenteeism was caused by a medical problem of respondent's hip. Respondent became employed in January 1977 as a maid. To the knowledge of the social worker, respondent was not disabled the entire period of time between April 1976 and January 1977.

Kimberly is not able to visit her mother when her mother's boyfriend is present, because he beats her mother and dislikes her; but nevertheless, the respondent continues to live with him. Respondent has expressed the knowledge that in order to regain custody of Kimberly, she must stop drinking, get a job, and move out of her boyfriend's house, but has expressed doubt in her moral strength to do so. Respondent has not abstained from alcohol nor has she responded to any of the rehabilitative services offered by the Department of Social Services, and the respondent visited Kimberly a total of 21 times between August 1975 and January 1977.

Rev. Harry Thomas, a counselor at the Alcohol Education Center, testified to his efforts to treat respondent for alcoholism, her failure to respond to such treatment despite promises to do better, her deterioration due to alcohol since 1973, and his belief that respondent will not be more responsive or improve in the future due to her chronic alcoholism.

Respondent testified that: in the past, she has had a severe problem with abuse of alcohol, but that her problem is now under control; she drinks beer and wine on occasion and had not been drunk in over nine months and hoped to be able to keep her problem under control; in May 1976, she began to suffer from a problem with her hip which was very painful and prevented her from working at her job as a maid; this pain continued until December 1976, and she did not have any money to pay for a visit to the doctor's office; she realized that to get her child back, she would have to move out of Mr. Marsh's home, and she planned to do so as soon as she became self-supporting; for the last eight months, Mr. Marsh's house was the only place she had to stay.

The court made its findings of facts and conclusions of law and entered the following order:

> "IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED that the parental rights to Kimberly Dinsmore of her mother, Nancy Dinsmore, and her father, Calvin Amburgey, be and the same are hereby terminated. Further, that said child is to remain in the custody of the Guilford County Department of Social Services until such time as she can be placed for adoption. EXCEPTION #8."

Respondent, Nancy Dinsmore, appealed.

*Thomas G. Foster, Jr., for petitioner appellee.*

*Diane Brady and Rion Brady, for respondent appellant.*

ERWIN, Judge.

G.S. § 7A-288, "Termination of parental rights," provided in pertinent part at the time controlling on this appeal:

> "In cases where the court has adjudicated a child to be neglected or dependent, the court shall have authority to enter an order which terminates the parental rights with respect to such child if the court finds any one of the following:

> (1) That the parent has abandoned the child for six consecutive months prior to the special hearing in which termination of parental rights is considered or that a child is an abandoned child as defined by chapter 48 of the General Statutes entitled 'Adoption of Minors.'

> *       *       *

> (3) That the parent has willfully failed to contribute adequate financial support to a child placed in the custody of an agency or child-care institution, or living in a foster home or with a relative, for a period of six months . . ."

[1] Respondent's first two assignments of error pertain to the trial court's finding that respondent ". . . has not been continuously sick since May, 1976, despite being continuously unemployed

since that time . . ." and to its conclusion that she ". . . has willfully failed to contribute financial or any other support to Kimberly since April, 1976 . . ." In essence, respondent contends that there was insufficient evidence to support the finding that respondent had not been continuously sick and that she had willfully failed to contribute adequate financial support.

Respondent seeks to negate the element of willfullness contained in G.S. 7A-288(3) by arguing that respondent was disabled during the period in question and unable to work at her usual occupation. The record shows: that respondent was fired from her job in May 1976 for excessive absenteeism; that her social worker from September 1976 was not aware of any disability on respondent's part; and that there was no medical evidence as to any disability. Even if the record shows sufficient evidence to support the finding that respondent had not been continuously sick since May 1976, it does not necessarily follow that respondent's failure to contribute adequate support was willful, as the statute requires. There are no decided cases under G.S. 7A-288(3), and we, therefore, must look to authority under other statutes.

*In re Adoption of Hoose*, 243 N.C. 589, 91 S.E. 2d 555 (1956), dealt with Chapter 48 of our Statutes, "Adoptions." There, our Supreme Court considered the willful abandonment contemplated by G.S. 48-2 and stated: "Wilfulness is as much an element of abandonment within the meaning of G.S. 48-2, as it is of the crime of abandonment. G.S. 14-322 and G.S. 14-326." 243 N.C. at 594. The Court went on to quote with approval from *State v. Whitener*, 93 N.C. 590 (1885):

> "The word willful, used in a statute creating a criminal offense, means something more than an intention to do a thing. It implies the doing the act purposely and deliberately, indicating a purpose to do it without authority—careless whether he has the right or not—in violation of law, and it is this which makes the criminal intent without which one cannot be brought within the meaning of a criminal statute." 93 N.C. at 592.

We feel the analogy of G.S. 7A-288 to Chapter 48 is an apt one. Indeed, both reference the other, and consistency requires us to consider these provisions together. We perceive no reason to define "willfulness" as applied to support under G.S. 7A-288 any

differently from the definition of "willfulness" as applied to abandonment under Chapter 48.

In *Mauney v. Mauney*, 268 N.C. 254, 150 S.E. 2d 391 (1966), our Supreme Court considered the issue of what sort of failure to comply with a court order to pay alimony *pendente lite* would support punishment by contempt proceedings:

> "A failure to obey an order of a court cannot be punished by contempt proceedings unless the disobedience is wilful, which imports knowledge and a stubborn resistance. 'Manifestly, one does not act wilfully in failing to comply with a judgment if it has not been within his power to do so since the judgment was rendered.' *Lamm v. Lamm*, 229 N.C. 248, 49 S.E. 2d 403.
>
> Hence, this Court has required the trial courts to find as a fact that the defendant possessed the means to comply with orders of the court during the period when he was in default." 268 N.C. at 257.

*See also Gorrell v. Gorrell*, 264 N.C. 403, 141 S.E. 2d 794 (1965); *Ingle v. Ingle*, 18 N.C. App. 455, 197 S.E. 2d 61 (1973); *Cox v. Cox*, 10 N.C. App. 476, 179 S.E. 2d 194 (1971).

It is not clear from the record whether the trial court based its finding that respondent had "willfully failed to contribute financial or any other support" to her daughter for the requisite statutory period upon her failure to pay $10.00 per week support pursuant to the 1975 order, upon her failure to fulfill her support duty, or both. (The record does show that respondent paid $200.00 under the order between September 1975 and April 1976.) In any event, we feel the record is insufficient to support a finding of willfulness in that we do not see here a respondent guilty of purposeful and deliberate acts (*Whitener, supra*) or guilty of knowledge and stubborn resistance (*Mauney, supra*). Nor did the trial court make any inquiry into the ability of respondent to comply with the 1975 order.

Manifestly, the termination of parental rights is a grave and drastic step. The Legislature recognized this, in part, by requiring that the failure to provide adequate financial support must be willful under G.S. 7A-288(3) to give the court authority to terminate parental rights. A holding that the record before us con-

tains sufficient evidence of willfulness to support a finding under 7A-288(3) would be inconsistent with the severe nature of the termination of parental rights. Parental rights are to be protected regardless of the economic situation of the individual parent. We hold that the trial court erred in finding a willful failure by respondent to contribute adequate financial support to her daughter.

G.S. 7A-288 contemplated that any one of the findings contained in its four subsections will give a court authority to enter an order terminating parental rights. We will now consider G.S. 7A-288(1), the other basis for the trial court's order. Again, there are no decided cases under G.S. 7A-288(1).

[2] The trial court found that respondent had shown "an intent to constructively abandon her child for a period much in excess of six consecutive months prior to the hearing." We agree with respondent that such finding is not based on the grounds formerly enumerated in G.S. 7A-288(1).

As quoted, a court's authority to terminate parental rights under G.S. 7A-288 rests upon a finding of one or more of the grounds listed therein. The trial court's finding of "an intent to constructively abandon" does not comport with G.S. 7A-288(1), which required either an abandonment for six consecutive months prior to the hearing or that the child is an "abandoned child" within the meaning of Chapter 48. The termination of parental rights under G.S. 7A-288(1) cannot be predicated upon mere intent.

The order of the trial court as to the termination of parental rights of respondent, Nancy Dinsmore, is reversed, and the cause is remanded.

Reversed and remanded.

Chief Judge BROCK concurs.

Judge VAUGHN dissents.