IN RE: WALTER WENDELL PHIFER

No. 8320DC725

(Filed 6 March 1984)

1. **Parent and Child § 1.6— proceeding to terminate parental rights—insufficient evidence of present neglect**

    A finding of fact that a parent abuses alcohol, without proof of adverse impact upon the child, is not a sufficient basis for an adjudication of termination of parental rights for neglect in that both G.S. 7A-289.32 and 7A-517(21) speak in terms of *past* neglect and make no provision for termination for threatened future harm.

2. **Parent and Child § 1.6— proceeding to terminate parental rights—insufficient evidence to support findings that respondent failed to pay reasonable support**

    In a proceeding to terminate parental rights, there were insufficient findings of fact to support the trial judge's conclusion that respondent failed to pay a reasonable sum for her child's care while he was in DSS custody.

APPEAL by respondent from *Burris, Judge.* Order entered 1 December 1982 in STANLY County District Court. Heard in the Court of Appeals 10 February 1984.

This appeal stems from the trial court's order terminating respondent's parental rights to her son, Walter Wendell Phifer. Following a hearing on a petition filed by the Stanly County Department of Social Services, the trial court entered an order containing the following pertinent findings of fact:

. . .

4) That the Petitioner Stanly County Department of Social Services first came in contact with Walter Wendell Phifer on December 16, 1981, upon receipt of a referral alleging the child to be unattended due to the mother's intoxication; that Carolyn Furr, a Case Worker with the Stanly County Department of Social Services visited the Phifer home with an Albemarle Policeman on that date; that both Furr and the Police Officer observed Mrs. Phifer to be in an intoxicated condition; further, that three or four empty pint bottles of liquor were observed lying about the Phifer home.

. . .

5) That a temporary hearing was held on December 18, 1981, at which time the child Walter Wendell Phifer was returned to his mother, with the proviso that if she were found to be in an intoxicated condition, the child would be removed and placed in foster care; that during a home visit by Carolyn Furr and another Case Worker on December 21, 1981, Mrs. Furr detected the odor of alcohol about Mrs. Bernice Phifer; that on this occasion, the child was in the care of his grandmother, Mary Frances Phifer.

6) That during the weekend of December 11th through December 13th, 1981, a neighbor of Bernice Phifer, Mrs. Mae Funderburke kept the child Walter Wendell Phifer while Bernice Phifer was drinking throughout the course of said weekend.

. . .

7) That on or about December 23, 1981 and January 7, 1982, Bernice Phifer was apparently unable to provide heat in the home where her child was kept, and received monies from the Stanly County Department of Social Services to provide fuel.

. . .

8) That on January 10, 1982, the respondent Bernice Phifer was found by Albemarle Police Officer Doyle Poplin in an intoxicated condition at 4:00 A.M. at Betty's Restaurant, East Main Street, Albemarle, N.C.; that the respondent was lying down in the booth at the time observed by Officer Poplin; that Officer Poplin thereupon drove Bernice Phifer to her home; further, that on January 19, 1982, when the Stanly County Department of Social Services again received a referral alleging neglect of Walter Phifer, Officer Poplin accompanied the Social Worker to the Phifer home, where Bernice Phifer was again observed to be in an intoxicated condition, with the odor of alcohol about her person, and swaying on her feet.

9) That on January 20, 1982, the Stanly County Department of Social Services, upon substantiation of a referral, removed the minor child Walter Wendell Phifer from the

home; that Mary Frances Phifer, the Grandmother of the child was present, and apparently intoxicated, smelling of alcohol and making incoherent conversation; that the mother, Bernice Phifer was not present; that the Grandmother, Mary Frances Phifer was unable to dress the child, and a neighbor, Sarah Harris dressed the child for departure.

. . .

10) That on January 22, January 28 and February 11, 1982, Stanly County Department of Social Services transported Bernice Phifer to seek employment, but Bernice Phifer failed to obtain any employment.

11) That after consultation with Bernice Phifer and her attorney, the Stanly County Department of Social Services prepared a contract setting forth objectives to be attained by Mrs. Phifer in order to have her child returned to her home; that some of the conditions of the contract were as follows: that Bernice Phifer attend the Piedmont Area Mental Health Center on a regular weekly basis; that Bernice Phifer cooperate with the Vocational Rehabilitation efforts to train and place her in public employment; that Bernice Phifer and Walter Pruette not consume alcoholic beverages; that Bernice Phifer demonstrate stability in the home environment, including providing lights and heat; that Bernice Phifer pay support for her child if employed; that Bernice Phifer enjoy day visits with Walter Wendell Phifer; and that Bernice Phifer show consistency in adhering to the terms of the contract.

12) Bernice Phifer violated virtually all of the terms of the contract cited above, in that she: failed to attend the Piedmont Area Mental Health Center on a regular weekly basis, and ceased attending at all in May, 1982; that she failed and refused to co-operate with Vocational Rehabilitation, and failed to obtain gainful employment; that she and Walter Pruette continued their former habits of consuming alcohol to excess; and that Bernice Phifer failed to exercise on a regular basis her opportunity for visits with her child Walter Wendell Phifer.

. . .

In re Phifer

14) That following the execution of the contract on February 19, 1982, a home visit of Walter Phifer was allowed on February 20, 1982, with the child delivered to the Phifer home at 9:00 A.M.; that upon returning for the child at 6:00 P.M., the Social Worker found the parents, Bernice Phifer and Walter Pruette to be highly intoxicated and arguing; that Walter Pruette stated to the Social Worker that they were "loaded"; further, that Walter Wendell Phifer was extricated from the home only after an hour spent by the Social Worker in calming Bernice Phifer and Walter Pruette.

. . .

15) That from February 20, 1982 to March 24, 1982, the Department of Social Services made four (4) efforts to arrange further conferences with Bernice Phifer, to include visitations with Walter Wendell Phifer; that no response was received from Bernice Phifer; that during this period two letters were sent to Bernice Phifer, and one home visit made, along with one office visit contact by Bernice Phifer.

16) That as a result of an Order of the Juvenile Court, and the contract entered into as aforesaid, Bernice Phifer was to attend treatment and counseling at the Piedmont Area Mental Health Center; that the visits were scheduled to take place weekly; that Bernice Phifer missed at least two (2) visits, was late another and rescheduled yet another; that although the schedule of treatment was to continue, Bernice Phifer ceased . . . [to attend] the Piedmont Area Mental Health Center on or about May 4, 1982, and has failed to return; that the Mental Health Center followed up by letter, requesting that she continue her schedule of appointments, but she failed so to do; that a prior letter had been written to Mrs. Phifer in March, 1982, when she missed appointments; that the provisional diagnosis made by the Piedmont Area Mental Health Center upon entry of Bernice Phifer was "continuous alcoholism"; that after further treatment and evaluation, the diagnosis of Bernice Phifer was changed to "episodic alcoholism," whereby the subject is evaluated to consume alcohol on an at least weekly basis.

. . .

17) That Bernice Phifer was scheduled to take Walter Phifer for a four-week check-up at the Stanly County Health Department on December 16, 1981; that she failed to appear for this check-up with her child as scheduled; that on January 8, 1982, she was scheduled for a check-up for Walter Wendell Phifer, but appeared 25 minutes late, and could not be seen; that the appointment was re-scheduled for three (3) days later, at which time the child was seen, and was observed to have an extremely severe case of "diaper dermatitis" (diaper rash); that the diaper rash observed was of the kind due to neglect, that is not changing dirty diapers; that said rash was not a bacterial type of rash; that after the child was placed in foster care on or about January 20, 1982, he was taken back to the Health Department for examination shortly thereafter, and the diaper rash had cleared; further, that Bernice Phifer consulted the Health Department for pre-natal care on or about June 18, 1981, as one of a series of visits for pre-natal care; that on said date she smelled of alcoholic substances, which odor was detected by the attending nurse.

. . .

18) That the respondent Bernice Phifer has sought treatment at the Stanly Memorial Hospital on at least three (3) separate occasions from February to June, 1982, when she was the victim of violent injury incurred in or about her home setting; that on February 17, 1982, she received treatment for a laceration of her cheek, and stated that the injury was caused by her boyfriend; then on March 26, 1982, she received treatment and examination for vaginal injuries, and stated she had been raped; for which no criminal charges were ever pursued; and that on June 26, 1982, she was treated for an injury to her eye caused by an ax handle, at which time she was observed by the attending personnel to be under the influence of ethyl alcohol.

. . .

19) That during the calendar year 1982, the respondent Bernice Phifer has been convicted of four (4) separate criminal offenses, all of which she admits through her own testimony; that on March 8, 1982, she was convicted of concealing merchandise, and placed on probation; that on June

22, 1982, she was convicted of non-support of Walter Wendell Phifer, and prayer for judgment was continued for two (2) weeks to allow her the opportunity to become employed and support said child; that on June 28, 1982, she was convicted of driving under the influence of alcohol; and that on July 13, 1982, she was convicted of misdemeanor larceny; that as a result of the last conviction, Bernice Phifer was incarcerated from July 13, 1982 until September 13, 1982.

. . .

20) That upon the continuance of prayer for judgment on June 22, 1982, the respondent Bernice Phifer's probation officer, Ashford Matthews told her to come to his office on the following Monday and he would assist her in finding a job; that Bernice Phifer failed to appear on the following Monday.

. . .

21) That the respondent Bernice Phifer was employed by B & D Prints, Albemarle, North Carolina, during the calendar year 1981, and left that employment when her pregnancy with Walter Wendell Phifer became advanced; that as a result of said employment, the respondent was eligible to draw, and did draw unemployment benefits for the period February 6, 1982 until July 13, 1982, as well as for a three-week period upon her release from prison in September, 1982; that the unemployment benefits received by the respondent amounted to $48.00 per week for the period cited; further, that during the period from the birth of Walter Wendell Phifer to December 1, 1982, the Respondent has been an able-bodied person, without any physical disability, and able to maintain gainful employment.

. . .

22) That the Respondent Bernice Phifer is the owner in fee, through inheritance, of a whole or one-half interest in a certain house and lot at 803 E. South Street, Albemarle, North Carolina, and has been since prior to December, 1981; further, that said property is not encumbered by a mortgage or any other lien.

23) That from the removal of Walter Wendell Phifer pursuant to Court Order on January 20, 1982, until April 2, 1982, the respondent paid no child support whatsoever; that on April 2, 1982, as part of a Juvenile Court Order entered that date, the respondent was directed to pay $10.00 per week for the support of Walter Wendell Phifer, with the first payment to be made that date; that the respondent Bernice Phifer made a payment of $10.00 on April 2, 1982; that from April 2, 1982 until the date of this hearing, the respondent Bernice Phifer has paid no additional child support monies whatsoever, even though she continued to draw unemployment benefits through July 13, 1982, and in September and October, 1982, and was gainfully employed for at least three (3) weeks next preceding the trial of this matter.

24) That the Defendant [sic] is presently employed at Deluxe Cleaners, Salisbury, North Carolina, and has been so employed for at least three (3) weeks preceding the trial; that she earns $5.00 per hour, and works approximately four (4) days of each week.

25) That during the approximately two (2) months Walter Wendell Phifer was in the custody of his mother, he was frequently left with one Mae Funderburke; that Mae Funderburke has kept the minor child frequently during the period November 15, 1981 to January 20, 1982; that Mae Funderburke has seen Bernice Phifer intoxicated during this period on several occasions; further, that Mae Funderburke states "Bernice has a drinking problem."

. . .

26) That in May, 1982, the respondent Bernice Phifer left the State of North Carolina with no notification to the Department of Social Services, Piedmont Area Mental Health Center, to her probation officer, or to any other individual or agency; that she went to the Town of Bishopville, South Carolina, and attempted to secure employment; that she was unsuccessful in so doing, and returned to Stanly County in time for Court in June, 1982. That the respondent relates that she is making payment to Heilig-Meyers Furniture Company and Lowe's, Inc. for furniture; that the payments have recently been restructured to accomodate [sic] her current in-

come; that she relates that "I am young and like to have a little fun" in explaining why she left her minor child with a babysitter and/or her mother on numerous occasions during the two (2) months she had custody of said child; she further states that her mother, Mary Frances Phifer, the child's grandmother, has a drinking problem, and the child should not be left with Mary Frances Phifer; that she, the respondent, does not draw food stamps despite her low level of income, due to a "misunderstanding" with her social worker, whereby the social worker was "bothered by 'hearsay'" about Bernice's living arrangements and the like; that notwithstanding her employment, her ability to make furniture payments and sustain herself, the respondent has been unable to comply with the Juvenile Court Order of April 2, 1982, still in effect, requiring her to pay $10.00 per week for the support of her minor child, Walter Wendell Phifer.

27) That the Stanly County Department of Social Services has made investigation, and that a satisfactory plan of permanent care is available to Walter Wendell Phifer if the respondent's parental rights are terminated.

. . .

Upon these findings, the trial court entered its conclusion and judgment as follows:

WHEREFORE, based upon the foregoing facts, all of which have been proven by clear, cogent and convincing evidence, the Court concludes as a matter of law that the child who is the subject of this proceeding is a neglected child within the meaning of North Carolina G.S. 7A-517(21), and that said child, in addition, has been placed in the custody of the Stanly County Department of Social Services a licensed child placing agency, and the parent, for a continuous period of six (6) months next preceding the filing of the Petition, has failed to pay a reasonable portion of the costs of the care for said child; that the parent, Bernice Phifer, has demonstrated that she will not provide a degree of care and supervision which promotes the healthy and orderly physical and emotional well-being of the child; further, that the minor child, during the period in which he resided with his mother, lived in an environment injurious to his welfare, that the child's need for

a permanent plan of care outweighs the need to protect him from unnecessary severance of the relationship with his biological parent; and further, that it is in the best interest of the child that his parent's rights be terminated.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the parental rights of Bernice Phifer, biological parent of Walter Wendell Phifer, are hereby completely and permanently terminated as to said child in accordance with North Carolina G.S. 7A-289.33(1) . . .

Respondent has appealed from the order of termination of her parental rights.

*Michael W. Taylor for respondent.*

*Lefler and Bahner, by John M. Bahner, Jr., for petitioner.*

WELLS, Judge.

Through various assignments of error, respondent contends that the trial court's findings are not supported by the evidence and the findings do not support the trial court's conclusions and judgment. For reasons which we state in our opinion, we will limit our opinion to the question of whether the findings support the conclusions and judgment.

Proceedings to terminate parental rights are governed by N.C. Gen. Stat. § 7A-289.32 (1981), which provides, in pertinent part, for termination upon the following grounds:

. . .

(2) The parent has abused or neglected the child. The child shall be deemed to be . . . neglected if the court finds the child to be . . . a neglected child within the meaning of G.S. 7A-517(21).

. . .

(4) The child has been placed in the custody of a county department of social services . . . and the parent, for a continuous period of six months next preceding the filing of the petition, has failed to pay a reasonable portion of the cost of care for the child.

A neglected child, as defined by N.C. Gen. Stat. § 7A-517(21) (1981) is one who

> . . . does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State Law, or who lives in an environment injurious to his welfare, or who has been placed for care or adoption in violation of law.

[1] We turn first to respondent's contention that the findings of fact do not support the trial court's conclusion that Walter was a neglected child within the meaning of G.S. §§ 7A-289.32 and 7A-517(21). At most, the relevant findings of fact show that Walter was removed from respondent's care on one occasion because of her intoxication; that respondent was drunk on approximately four occasions between December 1981 and January 1982; that respondent has asked for assistance in heating her home; that between February 21 and March 24, 1982 respondent contacted the department of social services (DSS) once but did not respond to DSS's efforts to arrange visits between respondent and Walter; that respondent missed or was late to two pediatrician's appointments and that Walter suffered from severe diaper rash on one occasion.

Petitioner argues that findings that respondent has abused alcohol show that Walter lived in an "environment injurious to his health," demonstrating neglect within the meaning of G.S. § 7A-517(21). Petitioner also contends that respondent's drinking habits and Walter's diaper rash show that respondent failed to provide adequate care and supervision for Walter within the meaning of the statute. At the very most, these findings present a threat that at some time in the future respondent might not be able to provide adequate care and supervision, if she fails to change her habits and lifestyle. Aside from Walter's diaper rash, these findings do not show that respondent's behavior has had any adverse effect on Walter. A finding of fact that a parent abuses alcohol, without proof of adverse impact upon the child, is not a sufficient basis for an adjudication of termination of parental rights for neglect. Petitioner apparently recognizes the paucity of findings of actual harm to Walter, and strenuously contends that a threat of future harm is sufficient grounds for termination

of parental rights. We disagree. Both G.S. §§ 7A-289.32 and 7A-517(21) speak in terms of *past* neglect and make no provision for termination for threatened future harm. It is clear, however, that our legislature was mindful of the plight of children threatened by a risk of future neglect, as shown by the terms of G.S. § 7A-544. Under that statute, DSS may obtain temporary custody of a child where there is a risk of neglect by the parent or guardian. This supports our position that the legislature was aware of the problem urged by petitioner, and simply did not choose to make risk of neglect a grounds for termination of parental rights.

It is also significant that petitioner is unable to cite any decision from our courts supporting the contention that risk of harm is sufficient grounds for termination. In *In re Dinsmore*, 36 N.C. App. 720, 245 S.E. 2d 386 (1978), there was evidence that the mother was an alcoholic, but termination of her parental rights was based on allegations of nonsupport and abandonment. There was no contention that the mother had neglected her child within the meaning of the statute simply by her status as an alcoholic.

While the cases are not unanimous, the majority of other states which have considered the question deny termination of parental rights upon a mere showing that a parent has abused alcohol or drugs, without some evidence of harmful effect upon a child. *See, e.g., Matter of S. D. Jr.*, 549 P. 2d 1190 n. 25 (dicta) (Alaska 1976); *Matter of Appeal in Pima County*, 25 Ariz. App. 380, 543 P. 2d 809 (1975); *In re J. M.*, 131 Vt. 604, 313 A. 2d 30 (1973), *but see In re Scarlett*, 231 N.W. 2d 8 (Iowa 1975).

We note that the trial judge made numerous findings concerning respondent's criminal convictions, her failure to find employment and failure to comply with various agreements made with petitioner. These findings are not relevant to the issue of neglect in this case, since there is no showing that these events had any effect upon Walter. We note, however, that G.S. § 7A-289.32(3) permits termination of parental rights of a parent who

> . . . has willfully left the child in foster care for more than two consecutive years without showing to the satisfaction of the court that substantial progress has been made . . . in correcting those conditions which led to the removal of the child or without showing positive response . . . to the diligent efforts of [DSS] . . . to encourage the parent to strengthen the

parental relationship . . . or to make and follow through with constructive planning for the future of the child.

If petitioner wishes to seek termination of respondent's parental rights on the grounds of respondent's failure to correct the conditions which led to the removal of Walter, then it must comply with the statute, which clearly requires a two year "trial" period for the parent. One of the most disturbing aspects of this case has been the apparent haste with which petitioner has sought to terminate respondent's parental rights. Respondent has had custody of Walter for only two months; a very short time in which to demonstrate her fitness as a parent. It is clear, of course, that in some cases acts of neglect sufficient to support an order terminating parental rights may occur in less than two months. In the case at bar, however, given the lack of proof of harm to Walter, respondent's interest in preserving the rights of parenthood clearly outweigh petitioner's interest in obtaining the drastic remedy of termination of parental rights.

[2]   We turn now to respondent's contention that there were insufficient findings of fact to support the trial judge's conclusion that respondent failed to pay a reasonable sum for Walter's care while he was in DSS custody. In considering whether a parent has failed to pay a reasonable portion of the cost of care, the trial judge must make findings of fact concerning both the ability of the parent to pay and the amount of the child's reasonable needs. *In re Clark,* 303 N.C. 592, 281 S.E. 2d 47 (1981); *In re Biggers,* 50 N.C. App. 332, 274 S.E. 2d 236 (1981). Although the trial judge in the case at bar made some findings concerning respondent's resources, he made no finding as to her ability to pay or the cost of Walter's care. Findings of fact concerning respondent's resources for the period after July, 1982 are irrelevant, since the termination statute specifically limits consideration to the amount of support paid for the six months next preceding the filing of the petition in termination. We hold that the findings of fact do not support the conclusion of law that respondent failed to pay a reasonable portion of the cost of Walter's care.

For the reasons stated above, we hold that there were insufficient findings of fact to support the trial judge's adjudication that Walter Phifer was a neglected child, and that respondent had failed to provide support within the meaning of G.S. § 7A-289.32.

Because of our holding that the order terminating respondent's parental rights must be reversed, we need not reach respondent's other assignments of error.

Reversed.

Judges BRASWELL and PHILLIPS concur.