**IN RE YOUNG**

[122 N.C. App. 163 (1996)]

---

IN RE: ERIC YOUNG, MINOR CHILD

No. COA95-533

(Filed 2 April 1996)

**Parent and Child § 101 (NCI4th)— termination of parental rights—sufficiency of evidence of neglect**

The evidence was sufficient to support the trial court's order terminating respondent's parental rights based on neglect of the child where it tended to show that respondent lived in filth and clutter, allowing roaches to crawl on her child, in his car seat and diaper bag, and on dirty clothes, allowing cat feces and cat urine in her home, and allowing dirty dishes and dirty clothes to pile up; she allowed these conditions to exist even after her move to another home; and she gave her child a "milk bottle with contents looking similar to cottage cheese." N.C.G.S. § 7A-289.32(2) and (21).

**Am Jur 2d, Parent and Child § 7.**

**Validity of state statute providing for termination of parental rights. 22 ALR4th 774.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

IN RE YOUNG

[122 N.C. App. 163 (1996)]

**Validity, construction, and application of statute limiting physician-patient privilege in judicial proceedings relating to child abuse or neglect. 44 ALR4th 649.**

Judge WYNN dissenting.

Appeal by respondent from order entered 3 November 1994 by Judge Michael E. Beale in Moore County District Court. Heard in the Court of Appeals 21 February 1996.

On 1 November 1994, the trial court entered an adjudication order holding that grounds existed to terminate respondent mother's parental rights based on neglect under N.C. Gen. Stat. § 7A-289.32(2) (1995). A subsequent dispositional order terminated her parental rights. From this order, respondent appeals.

*Lapping & Lapping, by Stephan Lapping, for petitioner appellee.*

*Brown & Robbins, L.L.P., by Carol M. White, for respondent appellant.*

*David G. Crockett Law Offices, by Jerry D. Rhoades, Jr., Guardian Ad Litem.*

ARNOLD, Chief Judge.

On appeal, respondent contends the trial court erred in terminating her parental rights because the trial court's findings of fact were not based on clear, cogent and convincing evidence that neglect or the probability of its repetition existed at the time of the termination proceeding. We disagree.

Under G.S. § 7A-289.32(2), parental rights may be terminated if the child is neglected by the parent as defined under N.C. Gen. Stat. § 7A-517(21) which provides:

[A neglected juvenile is] [a] juvenile who does not receive proper care, supervision, or discipline from . . . [his] parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to . . . [his] welfare; or who has been placed for care or adoption in violation of law.

N.C. Gen. Stat. § 7A-517(21) (1995).

**IN RE YOUNG**

[122 N.C. App. 163 (1996)]

The trial court must base its findings of fact on "clear, cogent and convincing evidence," a requirement which establishes an intermediate standard of proof, greater than the preponderance of the evidence standard, but less than the requirement of proof beyond a reasonable doubt. *In re Montgomery*, 311 N.C. 101, 109-110, 316 S.E.2d 246, 252 (1984); N.C. Gen. Stat. § 7A-289.30(e) (1995). In a termination case in which the appealing party raises questions about the evidence, our task is to review the evidence to determine whether there is clear, cogent, and convincing evidence to support the findings of fact and to decide whether those findings support the conclusions of law. *Id.* at 111, 316 S.E.2d at 253.

In the present case, the trial court found that Alvina Street, friend of respondent, observed a roach on the child's face on one occasion and also saw roaches on the car seat, diaper bag, and dirty clothes. Furthermore, on one occasion, Street observed respondent give the child a "milk bottle with contents looking similar to cottage cheese." Additionally, Street testified that respondent's Aberdeen apartment was "extremely cluttered" and that dirty diapers and dirty litter and cat feces were in the apartment. When Street later visited respondent's Pinebluff home, she observed dirty dishes accumulating and dirty clothes piled up. Finally, the trial court found that a few weeks prior to the hearing, Sue Stubbs, an acquaintance of respondent, visited respondent's Carthage home unannounced and found the home smelled of cat urine and found cat feces on the kitchen floor, conditions similar to those she observed at respondent's Pinebluff residence.

Considering this and other evidence, we find the trial court's findings of fact were based on clear, cogent and convincing evidence that neglect or the probability of its repetition existed at the time of the termination proceeding. The evidence showed that the problems which caused the injurious environment had continued and probably would recur. Accordingly, we conclude the trial court did not err in terminating respondent's parental rights.

Affirmed.

Judge MARTIN, Mark D., concurs.

Judge WYNN dissents with separate opinion.

IN RE YOUNG

[122 N.C. App. 163 (1996)]

Judge WYNN dissenting,

In my opinion the evidence terminating Dawn Christina Hayward's rights as a biological parent was not based on clear, cogent and convincing evidence that neglect or the probability of its repetition existed at the time of the termination proceeding. Accordingly, I dissent.

A petitioner who seeks termination of parental rights must show that clear, cogent and convincing evidence of neglect exists at the time of the termination proceeding. *In re Ballard*, 311 N.C. 708, 716, 319 S.E.2d 227, 232 (1984). "[T]ermination of parental rights for neglect may not be based solely on conditions which existed in the distant past but no longer exist." *Id. at* 714, 319 S.E.2d at 231-32.

Manifestly, the termination of parental rights is a grave and drastic step. *In re Dinsmore*, 36 N.C. App. 720, 726, 245 S.E.2d 386, 389 (1978). As such, "where there is a reasonable hope that the family unit within a reasonable period of time can reunite and provide for the emotional and physical welfare of the child, the trial court is given discretion not to terminate rights." *In re Montgomery*, 311 N.C. 101, 108, 316 S.E.2d 246, 251 (1984).

In the subject case, the trial court found in pertinent part, that Alvina Street, a friend of Ms. Hayward, observed a roach on the child's face on one occasion and also saw roaches on the car seat, diaper bag, and dirty clothes. Additionally, Mrs. Street testified that the apartment was "extremely cluttered" and that dirty diapers and dirty litter and feces were in the apartment. Furthermore, on one occasion, Mrs. Street observed Ms. Hayward give the child a "milk bottle with contents looking similar to cottage cheese." Mrs. Street also alleged that on many occasions she had to baby-sit the minor child so that Ms. Hayward could go out dancing or on dates. Ultimately, Mrs. Street confronted Ms. Hayward about the dirty conditions of her home and Ms. Hayward responded that she had financial problems.

Because the determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding, In re Ballard*, 311 N.C. at 716, 319 S.E.2d at 232, the court made the following relevant findings of fact regarding Ms. Hayward's present ability to care for the minor child:

56. The Court finds clear, cogent and convincing evidence that such neglect is likely to continue in light of Respondent's prior

history regarding her first minor child, Morgan and evidence presented through witness Sue Stubbs that as recently as four to six weeks prior to this hearing she found Respondent's home smelling of cat urine and cat feces on the kitchen floor, similar to the residences in Aberdeen and Pinebluff.

57. The Court also finds clear, cogent and convincing evidence that such neglect will continue by evidence that the Respondent spent $2,000.00 on the purchase of a convertible automobile rather that [sic] spending the money of pursuing custody of the minor child Eric.

58. The Court also finds clear, cogent and convincing evidence that neglect is likely to reoccur in light of Respondent's refusal to make changes in her lifestyle after advice from Jamie Bransford and Alvina Street. There is evidence that respondent has exercised weekly visits with her child since May, 1994 and, according to Kelvin Clark, she has cleaned her home.

59. The Court finds that the Respondent graduated from high school and studied religion and art at Tennessee Temple for four years, but did not graduate. The evidence of neglect and abandonment is especially disturbing in light of this Respondent's education and obvious intelligence.

These findings, in my opinion, were not based on clear, cogent and convincing evidence that neglect or the probability of its repetition existed *at the time of the termination proceeding.* Indeed, the record shows a considerable change in conditions. Ms. Hayward offered evidence tending to show that she was attempting to improve the conditions which had led to removal of her child and that she was making some progress in doing so. Since May 1994, Ms. Hayward has been allowed twenty-four one hour visits with her son since Alvina Street received legal custody, and she only missed two visits. Additionally, Kelvin Clark, a family therapist, employed by the court to conduct a home study, stated in his report that Ms. Hayward's house was neat and clean and that Ms. Hayward had "shown a good aesthetic sense in arranging flowers and art work to create a warm ambiance." Mr. Clark also testified about Ms. Hayward's willingness to become a better parent. He stated that her change in attitude primarily has been due to the fact that after the removal of the child, Ms. Hayward discovered that she has breast cancer and has a 60% chance that the cancer will not recur and that she will survive. Mr. Clark testified as follows:

I can't predict the future, but I do know that when people face death and trauma they change. I work with a lot of people who are recovering alcoholics, for example, I have worked with. And sometimes you see a man who has been drinking all his life and then, say, has a bad accident or a doctor says, "You're going to die if you don't stop drinking," and then he stops. And I think there are—pain is life's best teacher, and I think that's happened in Dawn's life.

On the other hand, the trial court found as a fact that Sue Stubbs testified that a few weeks prior to the trial, she made an unannounced visit to Ms. Hayward's home and found cat feces on the kitchen floor and the kitchen smelled like a cat. However, Mr. Clark stated in his testimony that "I don't know a cat owner who hasn't had cat feces on their floor; I do think it's a sign of negligence, but again, I don't think—I think if we focus on these sorts of things, all of us could be caught with a problem."

I also find it significant to note that the trial court found as a fact that "neglect is likely to continue in light of Respondent's prior history regarding her first minor child . . . ." However, the record indicates that no evidence was presented that Ms. Hayward had neglected her first child. Rather, Ms. Hayward gave her first child up for adoption.

Termination of parental rights is indeed the most drastic remedy available in cases where the protection of children is at issue. The evidence in this case is both isolated and equivocal. I would find that the trial court erred in terminating Ms. Hayward's parental rights.