TIMMONS-GOODSON, Judge.
Respondent-mother ("respondent") appeals the trial court order terminating her parental rights to her five-year-old son, Douglas.[1] For the reasons discussed herein, we affirm the trial court order.
The facts and procedural history pertinent to the instant appeal are as follows: On 16 September 2002, Davidson County Department of Social Services ("petitioner") filed a petition to terminate respondent's parental rights to Douglas. The petition alleged that sufficient facts existed to terminate respondent's parental rights to Douglas pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2). The petition contained the following pertinent allegations: a. On or about September 25, 2000, [Douglas] was adjudicated as a neglected juvenile by the Juvenile Court of Davidson County due to a history of lack of supervision of [Douglas], limited food supply and inadequate feeding of [Douglas], substance abuse and failure to obtain treatment, multiple criminal charges which forced other individuals to care for [Douglas], domestic violence in the home between the mother and father, and evidence of a cigarette burn on [Douglas'] wrist. [Douglas] has special needs which require patience and substantial parenting skills. [Respondent] was making significant progress toward reunification until evidence of a positive drug screen for Cocaine in August 2001 indicated a substance abuse relapse. [Respondent] again began to make significant improvement in that she was working to fulfill the requirements of the Family Services Case Plan and, consequently, her visitation with [Douglas] was increased to three hours of unsupervised visitation in March 2002. In May 2002, the visitation was changed to supervised because [respondent] did not know how to set limits for [Douglas] and [respondent] tested positive for Cocaine during an unscheduled drug test on May 7, 2002. [Respondent's] repeated relapses indicate that she cannot provide proper care and supervision for [Douglas].
b. [Petitioner] has offered services to [respondent] in [an] attempt to reunify this family. However, there has been no successful and consistent compliance with plans for reunification. . . . Despite these services, [respondent] has failed to demonstrate that she has overcome her substance abuse problem and that she could provide a safe, permanent home for [Douglas].
Respondent filed an answer denying the allegations of the petition and the case proceeded to trial. After receiving evidence and hearing argument from both parties, the trial court concludedas a matter of law that sufficient grounds exist to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (2). After determining that it was in the best interest of Douglas to do so, the trial court subsequently entered an order terminating respondent's parental rights on 14 July 2003. Respondent appeals.
The issues on appeal are whether the trial court erred by: (I) determining that sufficient grounds exist to terminate respondent's parental rights; and (II) determining that it was in Douglas' best interests to terminate respondent's parental rights.
Respondent first argues that the trial court erred by concluding that sufficient grounds exist to terminate her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). Respondent asserts that the trial court's findings of fact are not supported by competent evidence and do not support the conclusion of law. We disagree.
Termination of parental rights involves a two-stage process. In re Howell, 161 N.C. App. 650, 656, 589 S.E.2d 157, 160 (2003). The trial court first examines the evidence and determines whether sufficient grounds exist under N.C. Gen. Stat. § 7B-1111 to warrant termination of parental rights. Id. The trial court's findings must be supported by clear, cogent, and convincing evidence. Id. at 656, 589 S.E.2d at 160-61. If the trial court determines that any one of the grounds for termination listed in § 7B-1111 exists, the trial court may terminate parental rights consistent with thebest interests of the child. Id. at 656, 589 S.E.2d at 161. The trial court's decision to terminate parental rights is discretionary, and "this Court `should affirm the trial court where the court's findings of fact are based upon clear, cogent and convincing evidence and the findings support the conclusions of law.'" In re Yocum, 158 N.C. App. 198, 203, 580 S.E.2d 399, 403 (quoting In re Allred, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996)), aff'd per curium, 357 N.C. 568, 597 S.E.2d 674 (2003).
N.C. Gen. Stat. § 7B-1111(a)(1) (2003) allows the trial court to terminate a respondent's parental rights upon a finding that "[t]he parent has abused or neglected the juvenile. The juvenile shall be deemed . . . neglected if the court finds the juvenile to be . . . a neglected juvenile within the meaning of G.S. 7B-101." N.C. Gen. Stat. § 7B-101(15) (2003) defines a "neglected juvenile" as follows:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
Where, as in the instant case, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, the trial court must employ a different kind of analysis to determine whether the evidence supports a finding of neglect." In re Shermer, 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003). "[T]o require that termination of parental rights bebased only upon evidence of events occurring after a prior adjudication of neglect which resulted in removal of the child from the custody of the parents would make it almost impossible to terminate parental rights on the ground of neglect." In re Ballard, 311 N.C. 708, 714, 319 S.E.2d 227, 232 (1984). Thus, "[t]he determinative factors must be the best interests of the child and the fitness of the parent to care for the child at the time of the termination proceeding." Id. at 715, 319 S.E.2d at 232 (emphasis in original). While evidence of a prior adjudication of neglect is admissible at a subsequent termination hearing, "[t]he trial court must also consider evidence of changed conditions in light of the history of neglect by the parent and the probability of a repetition of neglect." Id.
In the instant case, the trial court made the following pertinent findings of fact regarding respondent's history of neglecting Douglas and the probability of respondent neglecting Douglas in the future:
14. [Petitioner] became involved with [Douglas] and the parents in February 2000. [Petitioner] began offering services to the parents, including substance abuse treatment to [respondent]. . . . [Petitioner] took custody of [Douglas] on July 9, 2000. In September 2000 [Douglas] was adjudicated neglected and dependent by stipulation of [respondent]. . . . The adjudication order recites [petitioner's] involvement up to that point, including [respondent's] use of controlled substances. Said findings included the following:
a. On July 9, 2000, law enforcement was called to [petitioner's] residenceas neighbors had heard a baby crying for over an hour. When officers arrived at the residence, they were unable to get anyone to the door. When they entered the apartment, they found the eighteen month old toddler [Douglas] laying on the floor behind the door, face down. [Respondent] was found on the couch, passed out. The officers were unable to wake [respondent].
b. On July 9, 2000, when questioned why she was sleeping and not supervising her son, [respondent] stated that she had taken a Valium. She was unable to tell the social worker when she last fed the child.
c. On July 9, 2000, the social worker observed what appeared to be a cigarette burn on [Douglas'] left wrist. During a Child Medical Evaluation performed by Dr. Winters of Thomasville Pediatrics on July 10, 2000 the injury was confirmed as a cigarette burn.
d. While the case was open for Treatment Services, the Department of Social Services received a new Child Protective Services report on April 10, 2000. This report alleged that [Douglas] was being left alone in the residence. [Petitioner] found the parents neglectful as a result of this chronic lack of supervision.
. . . .
15. [Respondent] admitted in her testimony in this termination hearing that she has had a long-term drug and alcohol problem. She has been in substance abuse treatment on and off since 2000. . . . She has been attending group counseling for substance abuse through the Davidson County Mental Health over the years, up to the present. In addition, by her testimony and attendance sheets introduced into evidence, she regularly attendsAlcoholics Anonymous (AA) meetings, including national conferences.
16. In spite of her treatment programs, [respondent] has had several "relapses" over the years. She had positive drug screens for cocaine in August 2001, April 2002 and May 2002. She also had many negative tests during this time period. [Respondent] introduced into evidence many of her negative screens, but none of her positive tests. [Respondent] also received two Driving While Intoxicated (DWI) charges during 2002, which subsequently resulted in convictions - in June 2002 in Davidson County, and in September 2002 in Randolph County. She will be doing additional mandatory substance abuse treatment as a result of these convictions.
17. The plan of care for [Douglas] has changed over the almost three years he has been in [petitioner's] custody. . . . When [respondent] submitted positive drug screens, the visits went back to being supervised and the plan has been termination of parental rights.
18. Although non-payment of support was not alleged as a ground for termination, the court received and considered evidence of the mother's support history as evidence of her commitment to her child. . . . Her payment history has been sporadic. As of the hearing date she was $1,911.00 in arrears. She has made two large payments in 2003 . . . and . . . her state tax refund was intercepted. . . . Even with this help and employment history, she owes more support now than when she came under the [court order].
. . . .
22. The original serious issue in this case, and the issue which has recurred, is substance abuse. [Respondent] has had treatment, periods without indications of abuse, and several significant relapses. The most recent relapses were the two positive drug screens and two DWIconvictions within the past thirteen months. The Court must determine, from evidence right up to the present, the likelihood of [respondent's] relapsing again and the effect of such behavior on the plan for the child.
23. [Respondent's] own testimony shows the Court her attitude toward substance abuse and substance abuse treatment. Referring to her attendance at Mental Health, she said that she is "attending to make the court system happy." She said, "I don't drink." Referring to one or both of the DWI cases, she said she was "in the wrong place at the wrong time." She said, "I must have a problem," so I go to AA. She said that two of the last three times she drank alcohol she was arrested for DWI, and that she just happened to get caught. She said, referring to one of the DWI cases, "I was not drunk." She said that she attended AA "when I could," but sometimes she was "tired" and sometimes "things come up." Although [respondent] acknowledged that she is an alcoholic, the Court does not believe that [respondent] really believes that. [Respondent] also exhibits general denial of her own responsibility concerning herself and her child. She said that DSS workers told her what she was supposed to do but did not explain those requirements. However, she was not able to give specific examples of such problems. She said that she did not get visitation, but she never missed a visit. She only grudgingly acknowledged that one of her prior caseworkers was the one who initiated the court hearing that resulted in her unsupervised visits. She also acknowledged on cross-examination that she knew of her child support responsibility and where to make payments. She and her witness . . . also blamed her prior attorney for some general failure to adequately represent her.
24. The truth of the matter is that [respondent] has not understood, and still does not understand, that she mustget off drugs and alcohol in order to remedy the original problem that brought her and her child before the Court. [Douglas] has been in [petitioner's] custody for just short of three years. Except for a six-week period when a relative placement was attempted, [Douglas] has been in foster care since July 2000. Based upon the evidence of past substance abuse and [respondent's] attitude expressed at the hearing, the Court finds that she is likely to abuse alcohol or drugs again, as she has during the past three years. She has not demonstrated a long-term commitment to sobriety in comparison to her history of abuse. If [Douglas] were returned to [respondent], there is a high likelihood of recurrence of the conditions that brought [Douglas] before the Court.
25. [Douglas] has been in the same foster home during the time this case has been pending. [Douglas] has special needs in the area of developmental delays. The foster parents and [petitioner] have appropriately addressed these needs through a pre-school program and in other ways described in the testimony. [Douglas] has a stronger bond with the foster family than with [respondent]. The foster parents have expressed an interest in adopting [Douglas]. Both [petitioner] and the GAL . . . are of the opinion that termination of parental rights and adoption are in the best interest of the child.
26. The Court takes judicial notice of the public policy of this State, as expressed in N.C.G.S. § 7B-1100, concerning the need for a permanent plan of care for juveniles at the earliest possible age, while protecting the juveniles from unnecessary severance of the parental relationship. The Court finds that the Respondent parents in this case have not provided and are still not capable of providing the degree of care which promotes the physical and emotional well-being of [Douglas].
(emphasis in original).
During the termination hearing, petitioner offered testimony from Anna Ryas ("Ryas") and Twana Robinson ("Robinson") and introduced several exhibits into evidence. Ryas, an enforcement agent at Davidson County Child Support Agency, testified regarding respondent's sporadic payments for Douglas' child support as well as petitioner's attempts to withhold respondent's paycheck and tax returns. Although respondent and Robinson both testified that respondent was working two jobs at the time of the termination hearing, Ryas testified that she did not have current verification of respondent's employment and had not received verification of employment since 20 September 2002. On appeal, respondent contends that finding of fact number eighteen is irrelevant to her case, in that her nonpayment of child support was not alleged as a ground for termination of her parental rights. However, as the trial court properly noted, although nonpayment of child support was not alleged as a ground for termination of respondent's parental rights, evidence of a respondent's ability yet failure to pay child support is a factor to consider when determining whether a child is neglected. See Yocum, 158 N.C. App. at 204, 580 S.E.2d at 403 ("[R]espondent neglected the minor child's welfare, in that he never paid any child support for the minor child and did not send the minor child any gift or other type of acknowledgment on her birthday.").
Respondent further contends that findings of fact numbers twenty-three, twenty-four, and twenty-six are not supported bysufficient evidence.[2] Specifically, respondent claims that her records of substance abuse treatment and her own testimony regarding her substance abuse problems provide conflicting evidence as to whether she has taken responsibility for her substance abuse issues or demonstrated a long-term commitment to sobriety. However, although contrary evidence may be relevant to the trial court's decision in a termination proceeding, it is not determinative. In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988) ("When the court's findings of neglect are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary."). Furthermore, this Court has previously recognized that
The function of trial judges in nonjury trials is to weigh and determine the credibility of a witness. The demeanor of a witness on the stand is always in evidence. All of the findings of fact regarding respondent's in-court demeanor, attitude, and credibility, including her willingness to reunite herself with her child, are left to the trial judge's discretion. Therefore, any of the findings of fact regarding the demeanor of any of the witnesses are properly left to the determination of the trial judge, since she had the opportunity to observe the witnesses.
In re Oghenekevebe, 123 N.C. App. 434, 440-41, 473 S.E.2d 393, 398-99 (1996) (citations omitted).
Although respondent's enrollment in and attendance at substance abuse classes demonstrates an interest in rehabilitatingherself, in light of the evidence introduced at trial, we are unable to conclude that the trial court abused its discretion by concluding that respondent had neglected Douglas and would likely continue to neglect Douglas in the future. As discussed above, petitioner introduced evidence during the termination hearing indicating that respondent twice tested positive for cocaine prior to her termination hearing and was twice convicted of driving while impaired within thirteen months of the hearing. On 28 November 2002, more than two months after the filing of the petition to terminate her parental rights, respondent was cited for public intoxication and disruptive behavior. Although respondent acknowledged that she was an alcoholic, she minimized her responsibility for her criminal offenses as well as her substance abuse issues. On cross-examination, she provided the following testimony:
Yeah, my first DUI was in June. And my second one was in September. But I'm - I was just in the wrong place at the wrong time in my car, and I know - I don't drink. I mean I don't - I go to Alcoholics Anonymous, I mean because I feel like you know, I got two DUIs, yeah, I must have a problem, but I never was - I'm not a heavy drinker when I was drinking. I was just leaving a restaurant after having a couple of beers and got pulled.
Respondent maintains that the trial court is precluded from finding neglect based upon her alcohol abuse without first determining that there was proof of an adverse effect of the abuse upon Douglas. In support of this contention, respondent cites In re Phifer, 67 N.C. App. 16, 25, 312 S.E.2d 684, 689 (1984), in which this Court held that "[a] finding of fact that a parentabuses alcohol, without proof of adverse impact upon the child, is not a sufficient basis for an adjudication of termination of parental rights for neglect."[3] We note that, in the instant case, respondent's abuse of alcohol was not the sole ground upon which termination was based; as discussed above, the trial court expressed concern regarding respondent's willingness to provide financial support for Douglas, respondent's attitude toward substance abuse treatment, respondent's multiple alcohol-related criminal offenses, and respondent's positive test results for cocaine. Furthermore, in Phifer, we stated that "[i]t is also significant that petitioner is unable to cite any decision from our courts supporting the contention that risk of harm is sufficient grounds for termination." Id. at 26, 312 S.E.2d at 690. However, as discussed above, this Court has since required that the trial court consider the "probability of a repetition of neglect" mentioned in Ballard, and the trial court in the instant case followed this mandate. See Shermer, 156 N.C. App. at 286, 576 S.E.2d at 407; In re Beasley, 147 N.C. App. 399, 405, 555 S.E.2d 643, 647 (2001); In re Brim, 139 N.C. App. 733, 742, 535 S.E.2d 367, 372 (2000). We also find it significant that respondent'sprior adjudication of neglect was based largely upon her substance abuse, and that in its termination order, the trial court acknowledged and examined respondent's attempts at changing those conditions which previously constituted neglect. In the detailed findings of fact contained within the termination order, the trial court indicates that although it considered respondent's attempts to rehabilitate herself, the trial court was unable to conclude that respondent could offer a proper environment for Douglas more than three years after the initial adjudication of neglect.
After reviewing the record in the instant case, we conclude that the trial court's findings of fact were supported by clear, cogent, and convincing evidence, and we also conclude that the trial court's findings of fact support its conclusions of law. Because we have determined that sufficient grounds exist to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), we need not consider respondent's arguments regarding termination of her parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). See In re Shepard, 162 N.C. App. 215, 225, 591 S.E.2d 1, 8 (2004). Thus, we hold that the trial court did not err in concluding that sufficient grounds exist to terminate respondent's parental rights, and therefore, we overrule respondent's first argument.
Respondent next argues that the trial court erred in determining that it was in Douglas' best interest to terminate respondent's parental rights. Respondent asserts that petitioner's evidence failed to establish a compelling reason to terminate herparental rights. We disagree.
Once the trial court determines that any one of the conditions authorizing termination of parental rights exists, the trial court is required to issue an order terminating parental rights unless "the court shall further determine that the best interests of the juvenile require that . . . parental rights . . . not be terminated." N.C. Gen. Stat. § 7B-1110(a) (2003). "The trial court's decision to terminate parental rights, if based upon a finding of one or more of the statutory grounds supported by evidence in the record, is reviewed on an abuse of discretion standard." In re McMillon, 143 N.C. App. 402, 408, 546 S.E.2d 169, 174, disc. review denied, 354 N.C. 218, 554 S.E.2d 341 (2001). "Evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage." In re Blackburn, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001). "It is . . . within the court's discretion to consider such factors as family integrity in making its decision of whether termination is in the best interests of the child[]." In re Smith, 56 N.C. App. 142, 150, 287 S.E.2d 440, 445, cert. denied, 306 N.C. 385, 294 S.E.2d 212 (1982). However, "the child[]'s best interests are paramount, not the rights of the parent." Id.
In the instant case, after hearing evidence from both parties, the trial court determined that it was in Douglas' best interests to terminate respondent's parental rights. In light of the evidence presented during the termination proceedings and discussedabove, we are unable to conclude that the trial court's determination is arbitrary or manifestly unsupported by reason. During the adjudication portion of the proceedings, Robinson testified that Douglas is considered "developmentally delayed" and is "attending a specialized preschool program to address . . . . delays center[ed] around speech and cognition." Robinson further testified that Douglas' foster parents were providing for his special needs and had expressed interest in adopting him. The trial court was well within its discretion to conclude that Douglas' best interests would be served by terminating respondent's parental rights. Yocum, 158 N.C. App. at 206, 580 S.E.2d at 404. Although "[t]he decision of whether to terminate parental rights should not be relegated to a choice between the natural parent and the foster family[,]" In re Nesbitt, 147 N.C. App. 349, 360-61, 555 S.E.2d 659, 667 (2001), in the instant case, the trial court recognized that respondent's substance abuse problems prevented her from adequately providing for Douglas' special needs as well as from forming the parent-child bond necessary to address Douglas' needs and developmental delays. Thus, we hold that the trial court did not abuse its discretion in terminating respondent's parental rights, and, therefore, we overrule respondent's second argument. Accordingly, we affirm the trial court's order terminating respondent's parental rights.
Affirmed.
Judges HUDSON and STEELMAN concur.
Report per Rule 30(e).

For the purposes of this opinion, we will refer to the minor child by the pseudonym "Douglas."

We note that respondent assigns error to finding of fact number twenty-five as well, yet makes no argument in her brief supporting why this finding was erroneous. Thus, pursuant to N.C.R. App. P. 28(b)(6) (2004), this assignment of error is deemed abandoned.

Respondent also cites Owenby v. Young, 357 N.C. 142, 579 S.E.2d 264 (2003) for the proposition that a finding of alcohol abuse, without more, is insufficient to terminate parental rights. However, we note that Owenby involved a custody dispute between a widower and the decedent's mother, and, after briefly discussing N.C. Gen. Stat. § 7B-1111, our Supreme Court stated that "[t]his statutory procedure is not the subject of the present case." 357 N.C. at 145-46, 579 S.E.2d at 267. Therefore, we conclude that Owenby is inapplicable to the instant case.